IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

_____

THE STATE OF ARIZONA,
*Appellee,*


*v.*


FRANCISCO L. ENCINAS VALENZUELA,
*Appellant.*

No. 2 CA-CR 2014-0169
Filed May 26, 2015

_____


Appeal from the Superior Court in Cochise County
No. CR201300076
The Honorable Karl D. Elledge, Judge

**AFFIRMED**

_____

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Diane Leigh Hunt, Assistant Attorney General, Tucson
*Counsel for Appellee*

The Law Office of Mark F. Willimann, LLC
By Mark F. Willimann, Tucson
*Counsel for Appellant*

Law Offices of Jeffrey D. Bartolino
By Jeffrey D. Bartolino, Tucson
*Counsel for Amicus Curiae Arizona Attorneys for Criminal Justice*

## OPINION

Presiding Judge Miller authored the opinion of the Court, in which Judge Espinosa concurred and Chief Judge Eckerstrom dissented.

M I L L E R, Presiding Judge:

**¶1**  Francisco Valenzuela was convicted after a bench trial of two counts of aggravated driving under the influence of alcohol (DUI) and sentenced to concurrent prison terms totaling 1.5 years. On appeal, he contends he was coerced into consenting to blood, breath, or urine tests by the language the arresting officer used to implement Arizona's implied consent admonition. He also contends his consent to testing was involuntary based on the totality of the circumstances. For the following reasons, we affirm.

**Factual and Procedural Background**

**¶2**  We consider only the evidence introduced at the hearing on the motion to suppress and view the facts in the light most favorable to sustaining the trial court's ruling. *State v. Butler*, 232 Ariz. 84, ¶ 8, 302 P.3d 609, 612 (2013). In August 2012, a Department of Public Safety (DPS) officer responded to a call about an unconscious man behind the wheel of a vehicle on a state highway. The officer found Valenzuela asleep in a truck with the gear in drive, an open container of alcohol in the center console, and the odor of alcohol coming from the vehicle. After waking Valenzuela, the officer conducted several field sobriety tests and then arrested him for DUI.[1] At the police station, the officer read Valenzuela an administrative implied consent affidavit (admin per se) form. According to the officer, he did not threaten Valenzuela or make any promises to obtain his consent for testing, and Valenzuela

---

[1]At the suppression hearing, Valenzuela stipulated that the results of the field sobriety tests provided the officer with reasonable suspicion of DUI.

understood the questions asked and agreed to provide breath and blood samples. Valenzuela's results on the breath tests were .223 and .241.[2] Valenzuela also provided a blood sample. He was subsequently charged with five counts of aggravated DUI.

¶3 The trial court denied Valenzuela's motion to suppress the results of the chemical testing upon the conclusion of the hearing. In its oral ruling, the court rejected the argument that a warrantless search following consent was "per se unreasonable"; further, it found that Valenzuela's consent was "unequivocal" as a matter of fact and "not . . . involuntary" under a Fourth Amendment totality-of-the-circumstances analysis. Soon after the suppression hearing, Valenzuela waived his right to a jury trial and proceeded based on stipulated facts. The court found him guilty on all five counts, but dismissed three counts at sentencing because they were lesser-included offenses. He was sentenced as described above, and this appeal followed. This court granted a motion for Arizona Attorneys for Criminal Justice to file an amicus brief in support of Valenzuela's appeal.

**Discussion**

¶4 Valenzuela argues the trial court erred when it concluded he freely and voluntarily consented to the breath test and blood draw. We review a court's ruling on a motion to suppress for an abuse of discretion, but we review the court's legal conclusions de novo. *State v. Peterson*, 228 Ariz. 405, ¶ 6, 267 P.3d 1197, 1199-1200 (App. 2011).

¶5 Arizona's implied consent statute provides in relevant part that the driver of a motor vehicle "gives consent . . . [for tests] of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration" if the person is

---

[2]Valenzuela stipulated that these were the results of his tests and that the tests were conducted properly. The trial court's sentencing minute entry contains a clerical error in reporting the results of one of the tests; we correct that error by this decision. *See* Ariz. R. Crim. P. 31.17(b).

arrested by a law enforcement officer who has reasonable grounds to believe the person was in actual physical control of a motor vehicle while under the influence of liquor. A.R.S. § 28-1321(A).[3] If a driver refuses any test, he "shall be informed" that the license will be suspended, "unless [he] expressly agrees to submit to and successfully completes" the tests. § 28-1321(B). The statute does not specify any particular language or a form to implement the admonition. Despite the suggestion that consent is given at the time of licensure, if the driver refuses to submit, § 28-1321(D)(1) prohibits the officer from giving a test unless he obtains a search warrant or another exception applies.

¶6 Before the test results can be used in a criminal proceeding, a blood draw administered pursuant to Arizona's implied consent statute must comply with the Fourth Amendment's restrictions on warrantless searches. *Butler*, 232 Ariz. 84, ¶ 10, 302 P.3d at 612; *cf. Campbell v. Superior Court*, 106 Ariz. 542, 550, 479 P.2d 685, 693 (1971) (license suspension proceedings civil in nature). Generally, warrantless searches "'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009), *quoting Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is voluntary consent. *Butler*, 232 Ariz. 84, ¶ 13, 302 P.3d at 612.

¶7 Valenzuela challenges his consent based on portions of what the arresting officer told him, as well as a general contention that any time an arresting officer provides a § 28-1321 admonishment, any subsequent consent is the result of coercion. We begin with the suppression hearing record, which is limited.

¶8 The arresting officer testified that he read Valenzuela "the admin per se" from a written form he had been using for more than ten years. Although the officer was cross-examined about the

---

[3]We cite the current version of the statute, which has not changed in material part since Valenzuela committed his offenses. *See* 2013 Ariz. Sess. Laws, ch. 128, § 1.

form, it never was offered into evidence.[4] Amicus curiae asserts that "[t]he admonition which was read to Mr. Valenzuela is identical to the admonition read to DUI arrestees throughout the state." It relies, however, on the officer's testimony about how he uses the form. Amicus curiae also provides one page of a sample form which it contends is used generally by law enforcement. It provides no citation to statutory or administrative regulations about the source or authority of the attached document, nor sufficient background for any court to take judicial notice of it. Amicus curiae does not explain why the form is dated 2014, which is two years after Valenzuela's arrest. Finally, the proffered form referred to "reasons stated on the front of this form," but does not provide that page.

¶9 At oral argument, Valenzuela and amicus curiae also sought to rely on the stipulated facts filed in advance of trial. Although the stipulation provides what appears to be additional language from the admonition, the motion to suppress was argued and decided before the stipulated facts were submitted to the trial court. Moreover, counsel for the state conceded that it was not known whether the officer was consulted about the stipulated facts.[5] Finally, the parties disagreed whether Valenzuela checked the box indicating he would submit to the test. Because the stipulated facts were not before the court at the motion to suppress and the parties assert different factual assumptions attendant to those facts, we do not consider them on review.[6] *See Butler*, 232 Ariz. 84, ¶ 8, 302 P.3d

---

[4]At oral argument, Valenzuela asserted the full admonition was in the record, but eventually conceded it had not been admitted as an exhibit.

[5]The officer did not testify at the bench trial because the parties apparently agreed to proceed using only their stipulated facts.

[6]Almost two weeks after oral argument, Valenzuela moved to expand the record with the admin per se form he obtained from the Motor Vehicle Division. There was no suggestion that the trial court was provided this form or relied upon it to assess the totality of the circumstances. We declined the invitation to introduce the exhibit in this court and then speculate about the impact it could have had on

at 612; *see also State v. Herrera*, 232 Ariz. 536, ¶ 24, 307 P.3d 103, 113 (App. 2013) (noting limitation on review of pre-trial motion to suppress is consistent with general rule that appellate court's review is limited to record before trial court).

¶10 In summary, the record on the motion to suppress is devoid of evidence and legal authority to evaluate Valenzuela's arguments about "the admin per se form" in his case or generally, as well as how police officers provide § 28-1321 admonitions. Accordingly, consideration of the parties' arguments must be based on and limited to the officer's testimony at the suppression hearing. Most important, to the extent that Valenzuela's principal argument begins and ends with the first sentence of what he contends are the admonition's fatally irrevocable words, the form itself is unnecessary to our consideration of his arguments.

¶11 Valenzuela focuses on the officer's statement to him that "Arizona law requires you to submit to and successfully complete tests of breath, blood or other bodily substance as chosen by the law enforcement officer to determine alcohol concentration or drug content." Valenzuela relies on *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968), for the proposition that the six-word phrase "Arizona law requires you to submit" renders any consent involuntary because it was secured under the claim of lawful authority.

¶12 In *Bumper*, the state argued a home search was consensual, but the person who gave consent stated at the hearing

---

the trial court. *C.f.* Ariz. R. Evid. 201. Parties bear the responsibility of making and preserving the appellate record. *See State v. Dixon*, 226 Ariz. 545, ¶ 44, 250 P.3d 1174, 1183 (2011) (party did not preserve objection where document not marked for identification despite discussion with witness about contents). Record expansion in the appellate court is rare absent unusual need or extraordinary circumstances, which do not exist in this case. *See, e.g.*, *State v. Mott*, 162 Ariz. 452, 456-57, 458 & n.2, 784 P.2d 278, 282-83, 284 & n.2 (App. 1989) (court considered psychiatric records from different case that trial court relied on for its ruling).

that one of the officers "walked up and said, 'I have a search warrant to search your house,'" before she let them in. *Id.* at 546. There was no evidence in the record that the officer had a search warrant.[7] *Id.* at 549-50. The Supreme Court concluded that a prosecutor cannot prove consent was voluntary by "showing no more than acquiescence to a claim of lawful authority." *Id.* at 548-49. The Court held that an officer who says he has a warrant "announces in effect that the occupant has no right to resist the search." *Id.* at 550.

¶13        Drivers in Arizona, however, may refuse a warrantless search. Section 28-1321(B) explicitly acknowledges and supports a driver's right to refuse tests, albeit with civil penalties of increasing severity. The officer testified he notifies a driver that he has a choice whether to submit to the test. Additionally, if the driver refuses the test the officer informs the person that the officer will apply for a warrant to compel testing. Unlike in *Bumper*, Valenzuela was informed by the statute and the officer's admonition that he had a choice, not that the officer intended to search him regardless of his answer or whether the officer had a warrant.[8] *See People v. Harris*,

---

[7]Although the court noted the state's assertion at argument "that the searching officers did, in fact, have a warrant," it never was returned and, therefore, could not be evaluated or considered. *Id.* at 550 n.15.

[8]Several cases cited by amicus curiae are distinguishable for the same reason—they involve law enforcement officers who implied or stated that a person had no choice but to consent to a search or that no warrant was necessary. *See Amos v. United States*, 255 U.S. 313, 315 (1921); *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 500 (9th Cir. 1994); *United States v. Johnson*, 994 F.2d 740, 742, 743 (10th Cir. 1993); *State v. Casal*, 410 So. 2d 152, 155-56 (Fla. 1982); *Commonwealth v. Krisco Corp.*, 653 N.E.2d 579, 582, 584-85 (Mass. 1995). Valenzuela also relies on *State v. Kananen*, 97 Ariz. 233, 238, 399 P.2d 426, 429 (1965), for his argument. In *Kananen*, our supreme court implied that the defendant's having been handcuffed and under arrest when he accompanied an officer to search a motel room resulted in coercion or duress, but ultimately determined the defendant never provided an unequivocal consent to the search. *Id.* at 237, 399 P.2d

184 Cal. Rptr. 3d 198, 210-12 (Ct. App. 2015) (distinguishing *Bumper* from state implied consent admonition); *State v. Brooks*, 838 N.W.2d 563, 571 (Minn. 2013) (same); *McCoy v. N.D. Dept. of Transp.*, 848 N.W.2d 659, ¶¶ 17, 20-24 (N.D. 2014) (same).

**¶14**　　　Further, in another context, the United States Supreme Court has considered whether a state's attachment of consequences to refusing to submit to alcohol testing is coercive. In *South Dakota v. Neville*, 459 U.S. 553, 564 (1983), the Court held that a driver is not coerced into testifying against himself in violation of his Fifth Amendment rights when the state uses his refusal against him at trial. The Court concluded that the driver was given the choice between submitting and refusing, and although it was "not . . . an easy or pleasant [choice] for a suspect to make," it was "not an act coerced by the officer." *Id.* Similarly here, the choice between two civil penalties does not result in coerced consent. *See Harris*, 184 Cal. Rptr. 3d at 211-13; *Brooks*, 838 N.W.2d at 570; *McCoy*, 848 N.W.2d 659, ¶ 21.[9]

---

at 428-29. There is no argument here that Valenzuela's consent was equivocal.

[9] Amicus curiae cites several cases in which consent was deemed involuntary because it was given after a claim of lawful authority. In each of those cases, however, it was the officer's misstatement of the law, rather than the correct use of the state's implied consent statute, that resulted in coercion. *See Cooper v. State*, 587 S.E.2d 605, 612 (Ga. 2003) (consent invalid where driver not suspected of violating DUI law, rendering implied consent law inapplicable; choice of consenting to chemical test or losing license not legally authorized); *Hannoy v. State*, 789 N.E.2d 977, 988 (Ind. Ct. App. 2003) (deputy never discussed implied consent law, stating instead, "'[I]t is my duty to check your blood for blood alcohol'"), *aff'd on reh'g*, 793 N.E.2d 1109 (Ind. Ct. App. 2003); *State v. Edgar*, 294 P.3d 251, 255, 262 (Kan. 2013) (officer's misstatement that driver "d[id] not have a right to refuse" breath test resulted in involuntary consent).

¶15        The choice is analogous to a party's decision whether to invoke the Fifth Amendment in a civil case if the answers could expose the person to criminal liability.  The person may invoke the privilege against self-incrimination, *State v. Ott*, 167 Ariz. 420, 425, 808 P.2d 305, 310 (App. 1990), or may choose to testify to increase the likelihood of a favorable civil judgment.  But even if a witness is not instructed on his Fifth Amendment rights during the civil litigation, his testimony is admissible in a later criminal trial, absent additional findings of coercion or duress.  *State v. Tudgay*, 128 Ariz. 1, 4-5, 623 P.2d 360, 363-64 (1981).

¶16        Valenzuela also contends he should have been asked whether he consented to testing before being warned about civil penalties.  We find persuasive the reasoning of the Oregon Supreme Court in *State v. Moore*, 318 P.3d 1133, 1138 (Or. 2013), when it confronted a similar argument:

> [I]t is difficult to see why the disclosure of accurate information about a particular penalty that may be imposed—if it is permissible for the state to impose that penalty—could be unconstitutionally coercive.  Rather, advising a defendant of the lawful consequences that may flow from his or her decision to engage in a certain behavior ensures that that defendant makes an informed choice whether to engage in that behavior or not.  Indeed, the *failure* to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary.

*Id.*  Courts in North Dakota and California also have adopted this reasoning.  *Harris*, 184 Cal. Rptr. 3d at 212; *McCoy*, 848 N.W.2d 659, ¶¶ 18, 21.  We agree it is more beneficial to provide full information before requesting consent.  Moreover, persons contesting

administrative suspension of their driver's licenses would argue they would not have declined the test had they been told beforehand that their decisions could result in the loss of their driving privileges.

¶17    Valenzuela also argues that two recent cases, *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1556 (2013), and *Butler*, 232 Ariz. 84, ¶ 10, 302 P.3d at 612, equate "implied consent" with a "compelled blood draw," thereby negating the voluntary nature of any consent to a test that followed the admonishment.  But these decisions cannot be stretched so far.  *McNeely* was limited to the question of whether the potential dissipation of alcohol in a defendant's blood over time constitutes a per se exception to the Fourth Amendment warrant requirement.  ___ U.S. at ___, 133 S. Ct. at 1556.  In concluding that it does not, the Court reaffirmed its holding in *Schmerber v. California*, 384 U.S. 757, 770 (1966), that a warrant generally is required to draw a DUI suspect's blood.  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1558.  There was no argument that actual consent given at the time of the blood draw would be invalid or involuntary based on an implied consent warning.  Further, a plurality of the Court noted that all fifty states have implied consent laws that impose penalties on drivers who refuse to submit to a blood alcohol test, characterizing these laws as "legal tools" designed to help states enforce drunk-driving laws without resorting to warrantless nonconsensual blood draws.  *Id.* at ___, 133 S. Ct. at 1566.

¶18    Regarding *Butler*, Valenzuela is correct that the court concluded, "[A] compelled blood draw, even when administered pursuant to [the implied consent statute], is a search subject to the Fourth Amendment's constraints."  232 Ariz. 84, ¶ 10, 302 P.3d at 612.  But Valenzuela is mistaken that the court concluded all blood draws pursuant to the implied consent statute were "compelled." Rather, in *Butler*, the state had argued actual consent was not required at the time of the blood draw because the driver already had given consent by driving and subjecting himself to the terms of the statute.  *Id.* ¶ 9.  The court concluded the Fourth Amendment applied to a blood draw despite the statute, requiring voluntary consent before blood is drawn.  *Id.* ¶ 10.  Indeed, the court then

proceeded to analyze whether the driver's consent was voluntary under the totality of the circumstances. *Id.* ¶¶ 18-21. The court did not hold, as Valenzuela argues, that one could never voluntarily consent to a blood draw after being informed of the statute's provisions. *See id.*

**¶19**     Valenzuela also appears to argue his actual consent was involuntary due to all of the surrounding circumstances. He specifically contends the trial court failed to consider all voluntariness factors listed in *United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002).

**¶20**     Our dissenting colleague enlarges Valenzuela's contention with the assertion of a "categorical rule" that "reasonable persons do not—and should not—believe themselves free to decline an officer's demand that they follow the requirements of law." He reasons this rule forecloses the totality of the circumstances analysis, relying on *Bumper*, 391 U.S. at 550. We disagree, both under Arizona law and the recent, well-reasoned decisions from other states employing virtually identical admonition language.

**¶21**     To the extent we addressed Valenzuela's conceptually similar argument that the first six words spoken by the officer rendered any subsequent consent involuntary and coerced, we will not repeat the entire analysis here. Simply stated, Arizona statutory law gives notice to drivers that officers cannot perform the test if an arrested driver refuses to submit, except pursuant to a search warrant. § 28-1321(D)(1). Moreover, the officer asked Valenzuela if he consented, and the officer was prepared to explain that he would apply for a search warrant if Valenzuela refused to submit. Therefore, those six words do not assume an importance that dwarfs other laws and the full context of the admonition, as well as the actual facts. In this respect, Arizona is markedly similar to several other states that reviewed their admonition statutes post-*McNeely*.

**¶22**     Minnesota and North Dakota require law enforcement officers to advise drivers arrested for DUI that state law requires them to take a blood or alcohol test. Minn. Stat. § 169A.51 ("Minnesota law requires the person to take a test"); N.D. Cent. Code § 39-20-01 ("North Dakota law requires the individual to take

the test"). Both statutes were challenged on a variety of grounds after *McNeely*, including the allegedly coercive effect of the statement that the "law requires" the driver to take the test. In *Brooks*, 838 N.W.2d at 571, the Minnesota Supreme Court rejected the driver's blanket validity argument, principally on the basis that the driver was informed he had a choice whether to submit and "the police are required to honor that refusal and not perform the test." Although it is true the drivers also are informed that they can confer with counsel, the fact of such consultation only pertains to whether there was coercion. *Id.* Moreover, advice of counsel may be particularly prudent in Minnesota because the refusal to submit to the test can result in criminal liability. *Id.* at 569.

¶23 North Dakota's statute also guarantees a driver's right to refuse testing. N.D. Cent. Code § 39-20-04. The North Dakota Supreme Court found that the choice embodied within that statute defeated the driver's argument that he was coerced. *State v. Smith*, 849 N.W.2d 599, 606 (2014). The special concurrence simplified the reasoning to a single sentence: "While the voluntariness of consent is decided from the totality of the circumstances, submitting to a blood alcohol test is not rendered involuntary merely by an officer fairly giving the implied consent advisory including the criminal penalty for refusing to take the test." *Id.* at 606-07.

¶24 Even when statutes do not require a law enforcement officer to inform a driver about what the law 'requires,' it is not a per se violation of the Fourth Amendment if the officer phrases the admonition as a requirement. In *Harris*, 184 Cal. Rptr. 3d at 204, 210-12, the arresting deputy told the driver that refusal to submit to testing would result in license suspension, it could be used against him in court, and he was required to submit to the test. The court declined Harris's invitation to view the deputy's "requirement" statement as the only factor to consider in the totality analysis. *Id.* at 215. Instead, it recognized the trial court is vested with the power to judge credibility of the witnesses, resolve conflicts in facts, and to draw the inferences as to whether consent was voluntary. *Id.* at 214.

¶25 Construing a legally-accurate six-word phrase as a constitutional barrier that nullifies the totality of the circumstances analysis finds no support in *McNeely*. For instance, Chief Justice

12

Roberts proposed giving guidance to officers on whether to apply for a search warrant: if there is time to secure a warrant before the alcohol dissipates, then it must be done. ___ U.S. at ___, 133 S. Ct. at 1574. The Court characterized his suggestion as a "categorical," "modified *per se* rule." *Id.* ___, 133 S. Ct. at 1563. In stating its preference for a traditional totality of the circumstances analysis,[10] the Court observed that a bright line may distort police practices and, implicitly, does not take into account the wide variety of circumstances in this regular police-driver interaction. *Id.* at ___, 133 S. Ct. at 1563-64. There is little reason to believe the Supreme Court would apply the conclusion in *Bumper* to abandon the totality-of-the-circumstances analysis it recently re-affirmed in *McNeely*.

¶26 We also examine *McNeely* and *Butler* to determine whether the respective courts intended their decisions to change law enforcement procedures that had been in place for many decades. If the logical extension of a holding would be to preclude the great majority of DUI blood tests for a significant period of time, it is reasonable to expect those courts to signal anticipation of such a change. *Compare, e.g., Escobedo v. Illinois*, 378 U.S. 478, 488 (1964) (frequency of pre-indictment confessions "points up its critical nature" as stage when legal advice "surely needed"), *with Miranda v. Arizona*, 384 U.S. 436, 504 (1966) (Harlan, J., dissenting) (decision establishes new constitutional rules for confessions).

¶27 In *McNeely*, the court granted certiorari to resolve a split in authority among the states. ___ U.S. at ___, 133 S. Ct. at 1558. It rejected the per se exigency rule adopted by several states in favor of the case-by-case analysis it established in *Schmerber* forty-seven years earlier. *Id.* at ___, 133 S. Ct. at 1561. A plurality of the court noted in its review of state laws that the holding essentially had been adopted by many of the states.[11] *Id.* at ___, 133 S. Ct. at 1566.

---

[10]We recognize that the totality-of-the-circumstances analysis in *McNeely* pertains to exigent circumstances rather than the absence of coercion, but the principle remains the same for either question.

[11]The Court included Arizona in the category of states that do not permit nonconsensual blood tests, instead requiring officers to obtain a search warrant. *Id.* at ___, 133 S. Ct. at 1566 nn.9 & 10. It is

*McNeely* is more accurately read as an affirmance of state laws and police procedures that advanced with the times. Similarly, our supreme court in *Butler* accepted jurisdiction to reject the state's argument that all drivers give "implied consent" and to affirm the totality of the circumstances analysis. 232 Ariz. 84, ¶¶ 10, 14, 18, 302 P.3d at 612-13. There was no criticism of the admonition, which was given in two different versions, but presumably contained the same "requirement" language.[12] *Id.* ¶ 4. The majority did not suggest the admonition was problematic. In fact, concurring Justice Pelander stated he would have concluded consent was voluntary had review been de novo rather than abuse of discretion. *Id.* ¶ 31. Certainly, if an admonition in use for many decades constituted a per se violation of the constitution such that the remainder of the interaction between officer and driver would not even be subject to a totality of the circumstances analysis, the issue would have been foreshadowed by one or both of the courts. The absence of any such indication also persuades us *McNeely* and *Butler* do not require the dissent's categorical, per se rule. Therefore, we turn next to whether Valenzuela voluntarily consented to the test.

¶28 Voluntariness of consent is a question of fact determined by reviewing the totality of the circumstances. *See Butler*, 232 Ariz. 84, ¶ 13, 302 P.3d at 613, *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). In *Jones*, the Ninth Circuit listed five factors to consider in determining voluntariness: "(1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that [he] had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." 286 F.3d at 1152. The factors are "guideposts, not a mechanized formula to resolve the voluntariness

---

significant, though not dispositive, that the Court did not criticize or question Arizona law, or any other state law, for an admonition that begins with the phrase that is the subject of this case.

[12]The officer read the admonition and then re-stated it "in 'plain English.'" *Id.* ¶ 4. The officer's paraphrasing was not provided.

inquiry." *United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2003).

¶29 In its oral ruling on Valenzuela's motion, the trial court only expressly mentioned the fourth factor—whether he had been affirmatively notified he had a right to refuse the tests. Despite acknowledging the factor, the court did not make an explicit finding, ultimately determining consent was voluntary based on the totality of the circumstances. Valenzuela now contends the arresting officer's failure to tell him he had a right to refuse is the most important factor and "alone should have been sufficient for the trial Court to suppress the evidence." The Supreme Court in *Schneckloth*, however, rejected an argument that a *Miranda*-style warning informing the defendant of his right to refuse consent was necessary. 412 U.S. at 246-48. The Court concluded knowledge of a right to refuse is not "an indispensable element of a valid consent" to a search. *Id.* at 246. Valenzuela provides no further support for his argument that the trial court improperly weighed the *Jones* factors, and we find no abuse of discretion in the trial court's determination.

¶30 Valenzuela does, however, argue the trial court erred in its analysis of voluntariness by considering his demeanor when he consented. He relies on *United States v. McWeeney*, 454 F.3d 1030, 1034 (9th Cir. 2006), to argue "subjective" factors such as age, intelligence, and length of detention should not be considered in determining voluntariness. But *McWeeney* concerned the physical scope of a consensual search, and is not applicable here. *Id.* at 1034-35. Rather, the voluntariness of consent is based on a totality-of-the-circumstances test. *Schneckloth*, 412 U.S. at 226. Relevant factors may include age, education, intelligence, advice regarding constitutional rights, length of detention, and deprivation of food or sleep. *Id.* at 226, 248. Thus, in *Butler*, the court considered age, criminal history, the length of detention, the absence of parents, physical demeanor, and emotional state. 232 Ariz. 84, ¶ 20, 302 P.3d at 613. Despite Valenzuela's contention, such factors are valid considerations in determining voluntariness.

¶31 Here, the trial court concluded the officer provided the implied consent admonition to Valenzuela, and he unequivocally agreed to the testing. Although the court did not identify all

circumstances that might be relevant, no evidence was presented that Valenzuela was upset, lacked intelligence, felt threatened, or had been detained for a long time. The court did not err in determining Valenzuela's consent was voluntary based on the totality of the circumstances.

**¶32** Valenzuela also argues his consent was limited to administrative use—that is, he maintains he had agreed the blood test results could be used against him only for license suspension, but not in a criminal case. He cites *McWeeney* for this argument but that case is inapplicable. In *McWeeney*, the defendant agreed to let an officer "'look'" in the car, but argued his consent did not extend to the officer searching the trunk and lifting the carpet liner. 454 F.3d at 1034. The Ninth Circuit Court of Appeals concluded the defendant's general consent included the trunk and under the carpet, but ultimately held that the officers might have coerced the defendant into believing he had no right to withdraw or modify consent when the officers told him he was not allowed to observe the search. *Id.* at 1033-37.

**¶33** Additionally, Valenzuela's argument has limited factual support. He asserts he consented only to a search for administrative purposes because the admonition did not refer to the Fourth Amendment. But this ignores the fact that the admonition was given only after he was arrested for DUI. *See* § 28-1321(B). Further, nothing in the officer's testimony about his statements to Valenzuela suggested the test results would only be used in administrative proceedings. Finally, Valenzuela fails to further develop any argument that the fruits of an administrative search could not be used against him in a criminal trial.[13] The trial court did not err in

---

[13] Valenzuela cites *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989), to argue that the results of chemical testing under the implied consent statute could not be used in a criminal trial. But the Court did not conclude that results of administrative searches never could be so used. *Id.* at 618-19. Rather, it merely cited the fact that the railroad employees' drug and alcohol test results were not intended to be used by prosecutors as

concluding Valenzuela's consent was not limited to administrative proceedings.

**¶34** Finally, Valenzuela appears to make a facial challenge to the Arizona implied consent statute by noting that he "questions whether Arizona's 'implied consent' statute is Fourth Amendment compliant."[14] However, he engages in no statutory analysis and principally relies on purported language from the form throughout the rest of his brief, not the language of the statute. Any facial challenge to the language of the actual statute is therefore waived. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (argument in brief shall include "citations to the authorities, statutes and parts of the record relied on"); *see also State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995).

## Disposition

**¶35** For the foregoing reasons, Valenzuela's convictions and sentences are affirmed.

E C K E R S T R O M, Chief Judge, dissenting:

**¶36** When a law enforcement officer instructs a person who has been arrested for DUI that "Arizona law requires" him to "submit to" warrantless chemical tests to determine his blood alcohol concentration (BAC), as occurred here, the officer is asserting a claim of legal authority to conduct a search. As the Supreme Court held in *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968), a person's "acquiescence to a claim of lawful authority" makes the evidence obtained from it inadmissible under a theory of voluntary consent.

---

one factor of many in its determination that the warrantless tests were "reasonable" under the Fourth Amendment. *Id.* at 620, 623-24.

[14]Valenzuela also argued below that the question before the court was whether "Arizona's implied consent law [is] compliant with the Fourth Amendment." In context, and as the trial court clarified, the issue was whether his consent was voluntary in light of the admonition read to him.

¶37     The admonition here does not merely explain the "adverse consequences resulting from a refusal" to take a test, *State v. Moore*, 318 P.3d 1133, 1137 (Or. 2013), and it does not simply present a suspect with an unpleasant but permissible choice such as that addressed in *South Dakota v. Neville*, 459 U.S. 553, 564 (1983). Nor does it suggest or imply that the suspect has a legally recognized right to refuse the search. To the contrary, the admonition emphasizes expressly and repeatedly—no less than four times—that submission to the search is "required."

¶38     As the United States Supreme Court has made clear, a person's consent to a search can be voluntary only so long "as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 435 (1991). But when, as here, police assert that compliance is required, they effectively announce that the person "has no right to resist the search." *Bumper*, 391 U.S. at 550. Such "colorably lawful coercion" by an officer precludes a finding of voluntariness, because "[w]here there is coercion there cannot be consent." *Id.* Thus, a straightforward reading and application of controlling jurisprudence requires suppression of the BAC test results.

¶39     In most instances, the voluntariness of consent is a question of fact to be determined from the totality of the circumstances. *State v. Butler*, 232 Ariz. 84, ¶ 13, 302 P.3d 609, 612 (2013). But *Bumper* establishes that when the facts show the police have asserted a claim of lawful authority to conduct a search, then a court's analysis has reached its end; voluntary consent cannot be found as a matter of law. In *Bumper*, one of several law enforcement officers had asserted, "I have a search warrant to search your house," and the resident subsequently opened her door to permit entry. 391 U.S. at 546. The dissent maintained that the search should be upheld because the totality of the circumstances suggested nonetheless that she had invited the officers to search of her own free will and had no objection to it. *Id.* at 555-56 (Black, J., dissenting). The majority, however, declined to consider such factors in its analysis. *See id.* at 547-48 & 547 n.8. In so doing, the Court construed a person's acquiescence to a claim of authority as showing an intent to abide by the law; it is not interpreted as a

waiver of rights, but rather as a submission to lawful authority. *See id.* at 549 n.14.

¶40　　　The majority suggests that *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), rather than *Bumper*, should control here. But *McNeely* did not address any question of consent, much less consent in the context of an officer's claim of lawful authority. Rather, *McNeely* addressed the circumstances under which police may conduct a warrantless blood draw in the absence of consent. 133 S. Ct. at 1556. Contrary to the majority's assertion, therefore, adherence to the Court's holding in *Bumper* does not conflict with the analytically distinct question presented in *McNeely*.[15] *Bumper* has neither been overruled nor narrowed by subsequent opinions of the Court, and it squarely addresses the claim before us. I submit we are duty bound to apply it.

¶41　　　Indeed, the categorical rule from *Bumper* conforms to the traditional test for determining voluntary consent to a search. That test is whether a "'reasonable person'" in the same circumstances would have understood that he or she was free to decline the officer's request. *United States v. Drayton*, 536 U.S. 194, 202 (2002), *quoting Bostick*, 501 U.S. at 436. Categorically, reasonable persons do not—and should not—believe themselves free to decline an officer's demand that they follow the requirements of the law. *Cf.*

---

[15] Despite the majority's suggestion, our supreme court's decision in *Butler*, 232 Ariz. 84, ¶ 21, 302 P.3d at 613—which upheld a finding of involuntary consent—did not address the argument presented here, nor did its quotation of the admin per se affidavit imply that the court approved of that document's language. *Id.* ¶ 4; *see Calnimptewa v. Flagstaff Police Dep't*, 200 Ariz. 567, ¶ 24, 30 P.3d 634, 639 (App. 2001) ("[I]t is always inappropriate to read an appellate opinion as authority for matters neither specifically presented and discussed, nor even accorded footnote mention."). Notably, the language of "require[ment]" found in the admin per se affidavit has no basis in Arizona's implied consent statute, § 28-1321. Therefore, while the principles set forth in *Bumper* require some revision of the admin per se affidavit, no changes are required to § 28-1321 to comply with that precedent.

*State v. Rodriguez*, 186 Ariz. 240, 246, 921 P.2d 643, 649 (1996) ("A reasonable person would assume that police understood the boundaries of the law.").

**¶42**      This is the only rule that can be harmonized with safe and orderly interactions between law enforcement officers and suspects. Were our laws to permit persons to second-guess or refuse commands made under color of law, we would undermine the "'[o]rderly submission to law-enforcement officers,'" *Bumper*, 391 U.S. at 549 n.14, *quoting United States v. Elliott*, 210 F. Supp. 357, 360 (D. Mass. 1962), thereby increasing risks to both officer and public safety. As our own supreme court has observed, "if resistance to an arrest or a search made under the color of law is allowed, violence is not only invited but can be expected." *State v. Hatton*, 116 Ariz. 142, 147-48, 568 P.2d 1040, 1045-46 (1977).[16]

**¶43**      The admonition given to Valenzuela here would cause any reasonable person to believe a chemical test is demanded under color of law, and required rather than voluntary.[17] The admonition

---

[16] Although the majority cites *Schneckloth v. Bustamonte* to support a totality-of-the-circumstances approach to voluntariness deviating from *Bumper*, it overlooks that *Schneckloth* emphasized the "narrow" scope of its decision and stated that its holding applied "only . . . when the subject of a search is not in custody." 412 U.S. 218, 248 (1973). Here, by contrast, we are faced with an in-custody defendant who was advised by an officer of the putative requirements of Arizona law to submit to a search, meaning *Bumper* should control. Despite the majority's suggestion, the custodial status of a DUI arrestee, with its attendant coercive pressures, clearly distinguishes the present situation from an ordinary civil subpoena to testify, and we derive no benefit from the comparison. *See Maryland v. Shatzer*, 559 U.S. 98, 106-07 (2010) (acknowledging coercive influences arrestees face in unfamiliar, police-dominated atmosphere when police persist in seeking cooperation with active criminal investigation).

[17] The DPS officer testified at the suppression hearing that he had read the admonition from "the admin per se affidavit" from the Arizona Department of Transportation, which is a standard

begins with the statement that "Arizona law requires you to submit to and successfully complete [the] tests," proceeds thereafter to assert that "[t]he law enforcement officer may require you to submit to two or more tests," that "[y]ou are required to successfully complete each of the tests," and, at its conclusion, that "[y]ou are, therefore, required to submit to the specified tests."[18] In short, the admonition begins and ends with the officer's assertion that the tests are required—and, if that were not enough, it reminds the suspect of that claim twice in between.

**¶44**     That a DUI arrestee is asked, "Will you submit to the specified tests?" at the conclusion of the admonition does not alter the voluntariness analysis. As noted above, immediately before that question suspects are informed, "You are, therefore, required to submit to the specified tests." Moreover, a law enforcement officer who asks a DUI arrestee whether he will "submit" to a legally "required" test neither semantically nor logically presents the suspect with a voluntary, uncoerced choice. *See Bostick*, 501 U.S. at 435 (police request for consent must not "convey a message that compliance with their requests is required"). Indeed, the word

---

document substantially set forth in *Butler*, 232 Ariz. 84, ¶ 4, 302 P.3d at 611, and used as an exhibit at the hearing, though not formally admitted into evidence. *See State v. Gaffney*, 198 Ariz. 188, ¶¶ 3, 11, 8 P.3d 376, 377, 379 (App. 2000) (describing document as standard administrative form); *see also Tornabene v. Bonine*, 203 Ariz. 326, ¶ 5, 54 P.3d 355, 359 (App. 2002). The state does not dispute the content of the admonition here, and the officer's testimony about the form—which included a partial but verbatim quotation—establishes and confirms its essential features. Nonetheless, the precise author and authority of the form are irrelevant to the present voluntariness analysis. Furthermore, if this court were inclined to work with a more complete appellate record rather than emphasize its limitations, we could order the record supplemented to include this exhibit under the terms of Rule 31.8(a)(2)(iii), Ariz. R. Crim. P.

[18]A similar but conditional provision not implicated in this case advises anyone who delays testing, "You are not entitled to further delay taking the tests for any reason."

"submit" suggests that the arrestee is being asked to "accept or give in to the authority" of the officer. *The American Heritage Dictionary* 1737 (5th ed. 2011).

**¶45** By its plain terms, therefore, the admonition asserts a claim of lawful authority that precludes a finding of voluntariness. In the context of the officer's unambiguous statement to Valenzuela—that "Arizona law require[d]" him to submit to testing—I cannot agree with my colleagues that Valenzuela's subsequent submission can reasonably be viewed as anything other than acquiescence to a claim of lawful authority.

**¶46** Nor does the admonition given here, by describing the civil penalties for refusal, "explicitly acknowledge[]" any "right to refuse tests."[19] *Supra* ¶ 13. Before *McNeely* and *Butler* recently clarified DUI suspects' federal constitutional rights with respect to chemical testing, we repeatedly had distinguished a *right* to refuse testing from the mere *power* to do so, recognizing only the latter. *E.g.*, *Campbell v. Superior Court*, 106 Ariz. 542, 549, 479 P.2d 685, 692 (1971) ("[Statutory] language does not give a person a 'right' to refuse to submit to the test only the physical power. . . . [A] person does not have a right to refuse to submit to the test . . . ."); *Tornabene v. Bonine*, 203 Ariz. 326, ¶ 19, 54 P.3d 355, 363 (App. 2002) ("'[T]he law does not give motorists charged with DUI the right to refuse the

---

[19]The majority's focus on the language of the implied consent statute is misplaced, because it is the admonition given to a suspect that is relevant to the consent analysis—the claim of authority, as opposed to the authority itself. *Cf. Bumper*, 391 U.S. at 549-50 & 550 n.15 (assessing admissibility of evidence based solely on consent, not putative search warrant). Despite a suspect's legal rights or awareness thereof, an admonition given by an officer may be coercive if it makes an unqualified demand under color of law and does not indicate that the officer will respect the suspect's invocation of his right to refuse to cooperate. *Cf. Miranda v. Arizona*, 384 U.S. 436, 468 (1966) (noting *Miranda* advisory designed to overcome inherent pressures of interrogation and "show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it").

test; it only gives them the power to refuse and provides for certain consequences of such a refusal.'"), *quoting State v. Krantz*, 174 Ariz. 211, 215, 848 P.2d 296, 300 (App. 1992); *see also State ex rel. Verburg v. Jones*, 211 Ariz. 413, ¶ 8, 121 P.3d 1283, 1285 (App. 2005) ("A person always has the power to refuse to submit to lawful authority.").

¶47      Notably, the pertinent language in the admonition used here has remained the same since this pre-*McNeely* and *Butler* period of jurisprudence and therefore was crafted with that understanding in mind. *See, e.g., Tornabene*, 203 Ariz. 326, ¶ 5, 54 P.3d at 359 ("Arizona law requires you to submit to and successfully complete tests of breath, blood or other bodily substance as chosen by the law enforcement officer . . . ."). Thus, both the description of penalties for refusal and the ultimate query—asking if the suspect will submit to the test—implicitly acknowledge only that a suspect has the power to decline to follow the "require[ments]" of the law. Understood in the context of contemporary case law, such language was not designed to suggest that a suspect enjoys any right to refuse to take the test.

¶48      In fact, our law acknowledges numerous circumstances in which defendants possess the power, rather than the right, to refuse to comply with the requirements of the law. State law requires that arrestees submit to fingerprinting, A.R.S. § 13-3890(A), even though it too can be "refused" by an arrested person and compelled by a later court order. § 13-3890(B); *see Mario W. v. Kaipio*, 230 Ariz. 122, ¶¶ 9, 21, 281 P.3d 476, 479, 481 (2012). Persons who appropriately pull over when a patrol vehicle activates its emergency lights also theoretically have the power to instead engage in a high-speed chase. Nonetheless, we do not characterize their compliance with that command as a waiver of any later assertion that the officer lacked adequate cause to perform the stop. This is because pulling over is required by law regardless of whether a person chooses to do so. *See* A.R.S. §§ 28-622.01, 28-624(C); *see also* A.R.S. § 28-622(A) ("A person shall not willfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic."). Similarly, when officers ask DUI arrestees whether they will submit to tests that "Arizona law requires," the officers no more

suggest that the arrestees may lawfully refuse than when they ask suspects whether they will submit to an arrest and thereby avoid additional consequences for resistance, pursuant to A.R.S. § 13-2508. Neither query implies that submission is optional rather than mandatory.[20]

¶49    Although the majority would impute knowledge of § 28-1321(D)(1) to arrestees by operation of law—a provision which might be construed to imply a right to refuse testing—such an imputation finds no clear precedent in the law of search and seizure. "It is often stated that every person is 'presumed' to know the law. This 'conclusive presumption' is merely a restatement of the substantive rule that ignorance of the law is not a defense." *Edwards v. United States*, 334 F.2d 360, 366 (5th Cir. 1964). We generally impute knowledge of the law—or what it forbids—for purposes of imposing criminal liability. *See Cheek v. United States*, 498 U.S. 192, 199 (1991). But we do not do so when assessing whether police have asserted a claim of lawful authority or whether a person's consent to a search was voluntarily given. This is evident from the relevant legal tests controlling those inquiries.

¶50    In evaluating whether a person has provided voluntary consent to a search, we are instructed to pragmatically assess whether "a reasonable person would feel free to decline the officers' requests." *Bostick*, 501 U.S. at 436. To support its contention that Valenzuela knew he could decline the testing here, the majority imputes to him (1) a sophisticated knowledge of the interplay between Arizona's implied consent statute and the Fourth Amendment, a contentious issue resolved only recently by the United States Supreme Court, *see Butler*, 232 Ariz. 84, ¶¶ 9-10, 302 P.3d at 612; and (2) an interpretation of Arizona law (that a statutory right of refusal exists) at odds with longstanding Arizona

---

[20]The evident purpose of the question here is to clarify the moment at which administrative sanctions can be imposed and an officer can take the next step in the law enforcement process. Rather than suggesting a right to refuse, the affidavit's interrogatory merely provides a formal mechanism for establishing an unambiguous refusal.

jurisprudence holding that a suspect possessed only the power, not the right, to refuse testing. *Campbell*, 106 Ariz. at 549, 479 P.2d at 692. In so doing, I fear the majority has held Valenzuela to the standard of an especially gifted criminal lawyer rather than to the standard of a reasonable, ordinary person. Moreover, a legal presumption imputing to suspects such a comprehensive knowledge of the law cannot be harmonized with the fact-intensive inquiry into voluntariness and would render superfluous the consideration of any "advice to the accused of his constitutional rights," a factor indisputably relevant to evaluating consent to a search. *Schneckloth*, 412 U.S. at 226.

**¶51** One further implication of imputing such knowledge to suspects is especially troubling. Under the majority's logic, an officer may incorrectly advise suspects that they are required by law to submit to the officer's commands, yet they will be held to know otherwise. By so removing official negligence or malfeasance from a voluntariness analysis, a court incentivizes police misinformation and actual coercion under color of law.

**¶52** For these reasons, our analysis must be controlled by the admonition actually provided to Valenzuela rather than by the majority's novel, post-*Butler* reading of Arizona's implied consent statute. Under that admonition, no reasonable persons would logically construe the itemization of negative consequences for refusing the test as a signal that they have a legal entitlement to do so. To the contrary, substantial penalties, whether civil or criminal, are commonly reserved for violations of law, and sanctions usually may not be imposed for the assertion of a constitutional right. Thus, the articulation of civil penalties set forth in the admonition fails to meaningfully qualify or mitigate the accompanying assertions that the officer has the lawful authority to conduct the test.[21]

---

[21] The majority emphasizes the officer's testimony that if a person refused the test, the officer then would apply for a search warrant to compel testing. *Supra* ¶¶ 13, 21. But the officer's possible actions after a defendant's acquiescence are irrelevant to an analysis of the voluntariness of a suspect's consent and what was said to secure it. Furthermore, it is unclear from the testimony whether the

**¶53**        In sum, the typical DUI stop and arrest presents a driver with a number of legal obligations and choices.  Yet the admonition here utterly fails to distinguish one's submission to a chemical test as a voluntary act among the many mandates.  Simply presenting an arrested motorist with a yes-or-no choice to comply with a duty—whether that duty be real, colorable, or entirely false—does not transform the interaction into a consensual one.  When an arresting officer repeatedly says that something is required of an arrestee, no reasonable person would take that admonition to mean that submission to the officer's authority is not actually required, but rather voluntary.  And the contrary conclusion reached by the majority suggests a significant flaw in its reasoning.

**¶54**        Whereas other possible admonitions might allow a finding of voluntary consent, as other states' decisions may indicate, the present admonition does not.  The majority's reliance on *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), is misplaced.  Minnesota's implied consent statute and admonition are distinguishable because they inform drivers of their "right to talk to a lawyer before deciding whether to take a test," *id.* at 565, which was a significant factor in *Brooks*'s voluntariness analysis.  *Id.* at 571-72.[22]

---

officer addressed the topic of search warrants with Valenzuela prior to obtaining consent for the tests.  The standard implied consent admonition read here makes no reference to warrants, and the officer appeared to describe a distinct two-step process in the remainder of his testimony:

> [I]f they say, well, no, I'm not going to give you my blood or my breath, then [we]'re also telling them you have another choice, and the choice is that we will get a warrant. . . . We ask for consent first.  If they refuse consent, they're informed at that time that we're gonna obtain a warrant and to get the blood sample.

[22] Both *Brooks*, 838 N.W.2d at 569, and *State v. Smith*, 849 N.W.2d 599, ¶ 9 (N.D. 2014), are also distinguishable because

**¶55** The case of *People v. Harris*, 184 Cal. Rptr. 3d 198 (Ct. App. 2015), is more analogous to the present situation, although its reasoning is unpersuasive. There, the appellate court noted that the defendant repeatedly was told the chemical tests were "required," *id.* at 204, but it nevertheless reasoned that "a motorist [being] told he will face serious consequences if he refuses to submit to a blood test does not, in itself, mean that his submission was coerced." *Id.* at 211. That reasoning fails to address how a suspect's acquiescence to a "required" test can ever logically demonstrate voluntary consent. And, assuming arguendo that an advisory such as that here—which both asserts that the test is compulsory and emphasizes only the negative consequences of refusal—is not coercive, the mere absence of coercion falls far short of demonstrating any equivalence between submission and consent.

**¶56** The admonition here flatly and incorrectly provides that "Arizona law requires" a person arrested for DUI to submit to chemical tests, without identifying any countervailing legal right. It does not advise an arrestee of the additional terms of our implied consent law explaining that "[t]he test shall not be given, except . . . pursuant to a warrant" or under certain limited circumstances, if the person refuses to consent to the tests. § 28-1321(D)(1). Nor does it inform a person of the constitutional right to refuse warrantless testing under the Fourth Amendment to the United States Constitution and article II, § 8 of the Arizona Constitution. By both omitting any reference to the constitutional right or the statutory option to refuse testing, and by implying that the requirement to

---

statutes in those states criminalize the refusal to submit to testing, whereas Arizona imposes only administrative penalties of which Valenzuela was advised here. *See State v. Brito*, 183 Ariz. 535, 538, 905 P.2d 544, 547 (App. 1995). Insofar as *Brooks* and *Smith* nonetheless found DUI suspects' consent to be voluntary in their respective statutory environments, the obvious question remains without a satisfying answer: If criminalizing the exercise of a constitutional right to refuse warrantless testing is not coercive, then what exactly is?

submit to testing is broad and unqualified, the current advisory is misleading and coercive.

¶57        In short, the language found in the admonition and read to Valenzuela is subject to only one reasonable understanding of its purpose:  to induce acquiescence to a warrantless test.  The document was manifestly not designed to advise suspects of their constitutional right or implicit statutory choice to refuse.  It contains no language that even suggests the suspect possesses any option but to submit.  I fear the majority opinion therefore errs in construing mere acquiescence to that advisory as anything other than what is:  submission to a claim of lawful authority.

¶58        Given that persons driving in Arizona possess a constitutional right to refuse to submit to testing of their blood or breath in the absence of a search warrant, I would hold that it is not appropriate for our state's officers to repeatedly suggest otherwise.  A revised admonition that eliminates the mandatory language would likely be permissible; however, the warning in its current form is not.  Accordingly, I respectfully dissent from the majority's opinion upholding the suppression ruling.  I would reverse that ruling, order the BAC results suppressed, and remand the case to be retried solely on the aggravated DUI charges concerning impairment to the slightest degree under A.R.S. § 28-1381(A)(1).