KELLY, Judge:
¶ 1 Courtney Weakland appeals from her convictions for aggravated driving under the influence (DUI) while impaired to the slightest degree and aggravated driving with a blood alcohol concentration of .08 or more. She contends the trial court should have suppressed the results of blood-alcohol testing because police officers obtained her blood sample without a warrant and without valid consent. Although we agree the sample was unlawfully obtained, we conclude the officers acted in good faith, and exclusion of the evidence therefore was not required.
Factual and Procedural Background
¶ 2 "In reviewing the denial of a defendant's motion to suppress, we consider only 'evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling.' " State v. Valenzuela , 239 Ariz. 299, ¶ 3, 371 P.3d 627 (2016) ( Valenzuela II ), quoting State v. Hausner , 230 Ariz. 60, ¶ 23, 280 P.3d 604 (2012). In February 2015, an Oro Valley police officer arrested Weakland for DUI, handcuffed her, put her in the back seat of his patrol car, and read her an "admin per se" form, pursuant to A.R.S. § 28-1321, which provided that Arizona law "require[d]" her to complete certain tests to determine her blood-alcohol concentration. Weakland submitted to blood testing.
¶ 3 Weakland was indicted on one count of aggravated DUI while impaired to the slightest degree and one count of aggravated DUI with a blood-alcohol concentration of .08 or more. Before trial, she moved to suppress all of the evidence acquired through the warrantless search and seizure of her blood, arguing the requirement language in the admin per se admonition coerced her consent. The court summarily denied her motion.
¶ 4 Following conviction on both counts, the trial court sentenced Weakland to concurrent four-month prison terms followed by concurrent five-year probationary terms. She timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 13-4031 and 13-4033.
Discussion
¶ 5 On appeal, Weakland argues the blood test results should have been suppressed "because the police obtained her blood sample without a warrant and without valid consent." And she maintains the good-faith exception to the exclusionary rule, recognized by our supreme court in Valenzuela II , 239 Ariz. at 371, ¶¶ 31-35, 371 P.3d 627, does not apply. "We review the denial of a motion to suppress evidence for abuse of discretion, considering the facts in the light most favorable to sustaining the ruling." Id. ¶ 9. An error of law may constitute such an *448 abuse. Id. We review de novo the applicability of the good-faith exception. State v. Havatone , 241 Ariz. 506, ¶ 11, 389 P.3d 1251 (2017).
¶ 6 The state implicitly concedes that Weakland's consent for the warrantless blood draw was involuntary, and therefore invalid, pursuant to Valenzuela II , 239 Ariz. 299, ¶ 33, 371 P.3d 627. Indeed, the record shows the officer's interaction with Weakland did not comply with the standards set forth in that decision, which directs officers to inform suspects of the provisions of the admin per se statute "in a way that does not coerce consent by stating or implying that officers have lawful authority, without a warrant, to compel samples of blood, breath, or other bodily substances." Id. ¶ 28. The state has not asserted any other basis to find the search permissible under the Fourth Amendment. Thus, the sole issue on appeal concerns whether the good-faith exception to the exclusionary rule applies.
¶ 7 "The exclusionary rule, which allows suppression of evidence obtained in violation of the Fourth Amendment, is a prudential doctrine invoked to deter future violations." Id. ¶ 31. Because it functions solely for that purpose, it is unwarranted if it "fails to yield 'appreciable deterrence.' " Davis v. United States , 564 U.S. 229, 236-37, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), quoting United States v. Janis , 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Furthermore, while "deterrent value is a 'necessary condition for exclusion,' ... it is not 'a sufficient' one." Id. at 237, 131 S.Ct. 2419, quoting Hudson v. Michigan , 547 U.S. 586, 596, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). "[T]he deterrence benefits of suppression must [also] outweigh its heavy costs." Id.
¶ 8 "Therefore, when law enforcement officers 'act with an objectively reasonable good-faith belief that their conduct is lawful,' deterrence is unnecessary and the exclusionary rule does not apply." Valenzuela II , 239 Ariz. 299, ¶ 31, 371 P.3d 627, quoting Davis , 564 U.S. at 238, 131 S.Ct. 2419. In such cases, the good-faith exception to the exclusionary rule applies. Davis , 564 U.S. at 238-40, 131 S.Ct. 2419. But the exception will not apply when "officers exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," nor when circumstances show "recurring or systemic negligence." Havatone , 241 Ariz. 506, ¶ 21, 389 P.3d 1251, quoting Herring v. United States , 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). And "[t]he State bears the burden of proving the good-faith exception applies." Id. ¶ 19.
¶ 9 Weakland argues first that the state failed to raise the good-faith exception in the trial court, and has therefore waived any argument that it should apply. But "[w]e are required to affirm a trial court's ruling if legally correct for any reason and, in doing so, we may address the state's arguments to uphold the court's ruling even if those arguments otherwise could be deemed waived by the state's failure to argue them below."[2] State v. Boteo-Flores , 230 Ariz. 551, ¶ 7, 288 P.3d 111 (App. 2012).
¶ 10 Weakland next contends the good-faith exception should not apply because "the state continued to disregard Arizona case law that established the admin per se warning misstates the law." Citing Carrillo v. Houser , 224 Ariz. 463, 232 P.3d 1245 (2010), she contends our courts had "established that the admin per se warning misstated the law" and that allowing the state to rely on the exception in view of that uncertainty in the law would "incentivize rather than deter unlawful police behavior."
¶ 11 In Valenzuela II , however, our supreme court determined that the good-faith exception applied in circumstances nearly *449 identical to those before us here. The court determined that, as in this case, a DUI suspect's consent to a warrantless blood draw had been coerced by the officer's reading of the admin per se admonition. Valenzuela II , 239 Ariz. 299, ¶ 33, 371 P.3d 627. The court expressly rejected the argument Weakland makes as to Carrillo , explaining that case had held an arrestee must "unequivocally manifest assent to the testing by words or conduct" before an officer could proceed. Valenzuela II , 239 Ariz. 299, ¶ 34, 371 P.3d 627, quoting Carrillo , 224 Ariz. 463, ¶ 19, 232 P.3d 1245. The court had not, it stated, "suggested that the admonition ... was coercive." Id. Furthermore, the court expanded, it had not "ever questioned or overruled" cases concluding that Arizona's consent law required suspects to submit to blood testing, as stated in the admonition. Id. And, it pointed out that "our courts have continued to approve the admonition." Id .,citing State v. Valenzuela , 237 Ariz. 307, ¶ 24, 350 P.3d 811 (App. 2015) ( Valenzuela I ), vacated , 239 Ariz. 299, ¶ 36, 371 P.3d 627, and State v. Oliver , No. 2 CA-CR 2014-0359, ¶¶23-25, 2015 WL 4924747 (Ariz. App. Aug. 18, 2015) (mem. decision). Our supreme court having rejected this argument, we are bound to do so as well. See State v. Stanley , 217 Ariz. 253, ¶ 28, 172 P.3d 848 (App. 2007).
¶ 12 In her reply brief, however, Weakland also asserts that our supreme court's decision in State v. Butler , 232 Ariz. 84, 302 P.3d 609 (2013), which was issued between the arrest at issue in Valenzuela II and Weakland's arrest, set forth "unequivocally ... that notwithstanding the implied consent law, the validity of the consent must be determined solely upon the Fourth Amendment" and therefore "clarified" that the admonition was coercive. We disagree.
¶ 13 In Butler , our supreme court addressed "whether the Fourth Amendment to the United States Constitution requires that a juvenile arrestee's consent be voluntary to allow a warrantless blood draw." Id. ¶ 1. In that case, sixteen-year-old Tyler drove his car to school after smoking marijuana. Id. ¶¶ 2-3. The investigating officer read him the implied consent admonition, and he agreed to a blood draw, which he later challenged on the ground that his consent had been involuntary and that he lacked legal capacity to consent. Id. ¶¶ 4-5. The court acknowledged that, pursuant to the Supreme Court decision in Missouri v. McNeely , 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), a compelled blood draw is a search. Butler , 232 Ariz. 84, ¶ 10, 302 P.3d 609. But it noted that voluntary consent can allow a warrantless search. Id. ¶ 13. The court further noted that consent pursuant to § 28-1321"must be express," Butler , 232 Ariz. 84, ¶ 16, 302 P.3d 609, and that the statute "does not always authorize warrantless testing of arrestees," as some may "refuse by declining to expressly agree to take the test," in which case the statute requires a warrant, id. ¶ 17, quoting Carrillo , 224 Ariz. 463, ¶ 10, 232 P.3d 1245.
¶ 14 The court then concluded Tyler's consent had not been voluntary based on the totality of the circumstances, including his age, his demeanor, his having been placed in handcuffs, the length of his detention, and the absence of his parents. Id. ¶¶ 20-21. The court also noted that a deputy had "read the implied consent admonition to Tyler, once verbatim and once in what the deputy termed 'plain English,' concluding with the statement, 'You are, therefore, required to submit to the specified tests.' " Id. ¶ 20. The court did not address whether the language of the admonition was coercive, did not separately or clearly address its effect, and did not expressly raise a question as to its validity. Rather, it discussed the voluntariness of Tyler's consent under the totality of the circumstances-which, as set forth above, included numerous coercive factors-and, on that basis, it concluded Tyler's consent had been involuntary. Id. ¶¶ 18, 20-21.
¶ 15 Indeed, in Valenzuela II , the court limited its reliance on Butler to the propositions that a blood draw is a Fourth Amendment search and that it had in the past "focused on the totality of the circumstances, including but not limited to an officer's reading of an admin per se form, in determining whether a DUI suspect's consent to search was freely and voluntarily given." Valenzuela II , 239 Ariz. 299, ¶¶ 10, 20, 371 P.3d 627. It then took the additional step to apply law relating to claims of lawful authority, see *450 Bumper v. North Carolina , 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), and to conclude that officers must inform suspects of the implied consent law "in a way that does not coerce consent," Valenzuela II , 239 Ariz. 299, ¶¶ 22-23, 28, 371 P.3d 627.
¶ 16 Thus, in determining whether the good-faith exception applied, the court in Valenzuela II stated that Arizona courts had not "questioned or overruled" existing law relating to the admin per se admonition, but had instead "continued to approve" it. Id. ¶ 34. We therefore conclude we must follow our supreme court's guidance and apply the good-faith exception in this case. As our supreme court determined in Valenzuela II , binding precedent supported the conclusion that consent given pursuant to the admin per se statute was voluntary and had not been overturned. 239 Ariz. 299, ¶ 34, 371 P.3d 627 ; cf. State v. Mitchell , 234 Ariz. 410, ¶ 31, 323 P.3d 69 (App. 2014) ("Thus, we do not suggest that law enforcement is expected to anticipate new developments in the law.").
¶ 17 Accordingly, the circumstances here differ from those in Havatone , in which our supreme court concluded the state "should have known that routinely directing blood draws from DUI suspects who were sent out of state for emergency treatment, without making a case-specific determination whether a warrant could be timely secured, was either impermissible or at least constitutionally suspect." 241 Ariz. 506, ¶ 20, 389 P.3d 1251. The court pointed out in that case, which addressed blood draws from unconscious suspects pursuant to § 28-1321(C), that "warrantless blood draws from DUI suspects based on a 'per se exigency' rather than the totality of individual circumstances have been discredited for over fifty years." Havatone , 241 Ariz. 506, ¶¶ 12, 24, 389 P.3d 1251, citing Schmerber v. California , 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Thus, the court determined that as to such blood draws, no binding precedent had ever approved the practice; the law relating to that portion of the statute had remained unsettled, in contrast to the law relating to the admin per se admonition that the court addressed in Valenzuela II . Havatone , 241 Ariz. 506, ¶ 28, 389 P.3d 1251.
¶ 18 Although courts have declined to extend the good-faith exception to cases "in which the appellate precedent, rather than being binding, is (at best) unclear," the exception applies when " 'binding appellate precedent' expressly instructed the officer what to do." United States v. Lara , 815 F.3d 605, 613 (9th Cir. 2016). Our supreme court concluded in Valenzuela II that there was express authority for an officer to rely on the admin per se admonition to obtain valid consent. Indeed, the court cautioned against "fault [ing] law enforcement for failing to anticipate that [the court] would disapprove the admin per se form" based on case authority that was "not dispositive of the issue," noting Arizona cases that had "continued to approve the admonition" before Valenzuela II was decided. 239 Ariz. 299, ¶ 34, 371 P.3d 627. Application of the exclusionary rule is thus inappropriate. See United States v. Johnson , 457 U.S. 537, 565, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) ("[A] deterrence purpose can only be served when the evidence to be suppressed is derived from a search which the law enforcement officers knew or should have known was unconstitutional under the Fourth Amendment."). This is particularly so because the deterrent effect of exclusion, which is small when law enforcement could not have reasonably foreseen a change in the law, must outweigh its cost. See Davis , 564 U.S. at 236-37, 131 S.Ct. 2419.
¶ 19 The law does not require law enforcement to make legal assessments our courts have not made. At the time of Weakland's arrest, the courts of this state had not concluded the admin per se admonition was coercive, ineffective, or otherwise negated consent after Butler . See Valenzuela I , 237 Ariz. 307, ¶¶ 17-18, 350 P.3d 811, vacated , 239 Ariz. 299, ¶ 36, 371 P.3d 627 ; Oliver , No. 2 CA-CR 2014-0359, ¶¶ 10-13, 23-25 (relying on Valenzuela I and concluding admonition did not render consent involuntary); cf. State v. Okken , 238 Ariz. 566, ¶¶ 12, 17-24, 364 P.3d 485 (App. 2015) (citing Butler , but continuing to rely on Carrillo ); State v. Pena , No. 2 CA-CR 2013-0241, 2014 WL 3407343 (Ariz. App. July 10, 2014) (mem. decision) (citing Butler for various principles but not for bright-line rule that admonition impermissibly coercive);
*451 State v. Figueroa , No. 2 CA-CR 2012-0458, 2014 WL 287959 (Ariz. App. Jan. 24, 2014) (mem. decision) (citing Butler and concluding consent to blood draw not coerced when officer read admin per se admonition).[3] We therefore cannot say law enforcement was negligent in continuing to use the admonition.
¶ 20 Our dissenting colleague argues we cite only decisions that follow Valenzuela I "under principles of stare decisis." And he contends " Butler could be correctly cited for the proposition that the implied consent admonition was not sufficient alone to facilitate voluntary consent." He further maintains we have not "articulate[d] comprehensively the weight of that jurisprudence," asserting that only the decisions in Valenzuela I and II "squarely addressed whether the language of the implied consent admonition was compatible with constitutionally valid consent." Based on those two decisions, he argues only a minority of jurists accepted the state's position that, after Butler but before Valenzuela II , the implied consent admonition was sufficient to secure consent.
¶ 21 Even were we to accept our dissenting colleague's calculations as to the number of jurists who accepted the ongoing validity of the implied consent admonition after Butler , we would still be in a position of requiring law enforcement agencies to foresee a position that at least some jurists did not themselves adopt. Furthermore, we are aware of no authority to support the implicit suggestions that a case decided by a less than unanimous court carries less authority or that the number of jurists concurring in controlling decisions is relevant to good faith analysis.
¶ 22 In any event, his analysis of the post- Butler cases is incorrect. The court in Okken did, as our colleague describes, address whether the implied consent statutory scheme rendered consent involuntary and did not, as did Valenzuela II , directly address the admonition. But the court discussed Butler , stated that the statute required "actual consent before a warrantless search may be performed," discussed whether the statutory scheme was coercive, and yet made no mention of problems with the admonition-noting only that in Butler , "other factors," including "the defendant's age, his mental state, and the duration and circumstances of his detention," had rendered his consent involuntary. Okken , 238 Ariz. 566, ¶¶ 18-19 & n.1, 364 P.3d 485. Thus, the court apparently read Butler not as concluding that consent premised on the admonition was insufficient, but as determining that consent pursuant to the admonition could be rendered involuntary by other factors.
¶ 23 Furthermore, in Pena , our dissenting colleague and another member of this panel rejected a claim that a "warrantless breath test should have been suppressed under ... the Fourth Amendment."[4] No. 2 CA-CR 2013-0241, ¶¶ 5, 10. Citing Butler , the decision identified various factors to determine voluntary consent, noting, as evidence supporting a finding of voluntariness, that Pena had been arrested before and that the officers had not displayed their weapons. Id. ¶¶ 7-8. The court then considered that officers had advised Pena of his rights pursuant to Miranda[5] and given him the implied consent admonition. Id. ¶ 8. After initially refusing, Pena agreed to the test. Id. ¶¶ 4, 8. The decision does not address the validity of the admonition, but rather cites it as a basis for valid consent. Id. ¶ 8. Likewise, in Figueroa , a member of this panel rejected a claim of involuntary consent. No. 2 CA-CR 2012-0458, ¶¶ 18-21. In that case, we cited Butler as requiring compliance with the Fourth Amendment as to blood draws, rejected a *452 claim that force had been used against the defendant, and stated that an officer had read the admonition to the defendant, who had then consented. Id. ¶¶ 19-20. In each of these cases, had this court understood Butler in the manner in which our dissenting colleague proposes law enforcement should have, we could not have reached a conclusion that the defendants' consent, obtained in response to the admonition, was voluntary.
¶ 24 Thus, it was not until our supreme court set forth in Valenzuela II the proper procedures for giving the admin per se admonition that law enforcement had a clear directive that officers could not continue to use the admonition to imply they had authority to compel a warrantless blood draw. We will not hold law enforcement to a standard that requires them to have foreseen that change. See Mitchell , 234 Ariz. 410, ¶ 31, 323 P.3d 69. The trial court therefore did not abuse its discretion in denying the motion to suppress. See Boteo-Flores , 230 Ariz. 551, ¶ 7, 288 P.3d 111 (appellate court will affirm if trial court legally correct for any reason).
Disposition
¶ 25 Weakland's convictions and sentences are affirmed.

The supreme court decided Valenzuela II in April 2016. The state filed its answer to Weakland's motion to suppress in March 2016. Weakland's trial also took place in March. She was sentenced in April, four days before Valenzuela II was issued. Unlike the situation in Brown v. McClennen , 239 Ariz. 521, ¶ 16, 373 P.3d 538 (2016), in which our supreme court concluded the state had waived its good-faith argument "by failing to raise it until oral argument" before that court, the state in this case raised the good-faith exception in its briefing on appeal, the first time the necessity for its application became apparent, as this court's decision in State v. Valenzuela , 237 Ariz. 307, 350 P.3d 811 (App. 2015) (Valenzuela I ), vacated , 239 Ariz. 299, ¶ 36, 371 P.3d 627, remained the law at the time of the motion to suppress.

Rule 111, Ariz. R. Sup. Ct., bars citation of memorandum decisions of our state courts as precedent and allows citation for persuasive value in only limited circumstances. We cite our memorandum decisions in this instance solely to demonstrate that before Valenzuela II , members of the Arizona judiciary did not understand Butler in the way our dissenting colleague argues law enforcement was required to understand it.

After Pena was issued, the United States Supreme Court concluded "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." Birchfield v. North Dakota , ---U.S. ----, 136 S.Ct. 2160, 2184, 195 L.Ed.2d 560 (2016).

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).