JUSTICE LOPEZ, opinion of the Court:
 

 ¶1 We here consider whether the good-faith exception to the exclusionary rule applies, in a prosecution for driving under the influence ("DUI"), to admit blood evidence unconstitutionally obtained after
 
 State v. Butler
 
 ,
 
 232 Ariz. 84
 
 ,
 
 302 P.3d 609
 
 (2013), but before
 
 State v. Valenzuela
 
 (
 
 Valenzuela II
 
 ),
 
 239 Ariz. 299
 
 ,
 
 371 P.3d 627
 
 (2016). We hold that the good-faith exception applies because application of the exclusionary rule in these circumstances would not meaningfully deter police misconduct.
 
 Butler
 
 did not "unsettle" the law, and it is unreasonable to require police to predict a change in the law when our trial and appellate courts failed to do so.
 

 I.
 

 ¶2 In February 2015, an Oro Valley police officer arrested Courtney Weakland for DUI. The officer handcuffed her, put her in the back seat of his patrol car, and read her an "admin per se" form pursuant to A.R.S. § 28-1321. The form provided that Arizona law "require[d]" her to complete certain tests to determine her blood-alcohol concentration ("BAC"). She submitted to a blood draw, which revealed a BAC of .218, nearly three times the legal limit. Weakland was indicted on one count of aggravated DUI while impaired to the slightest degree and one count of aggravated DUI with a BAC of .08 or more.
 

 ¶3 Before trial, Weakland moved to suppress all evidence obtained through the warrantless search and seizure of her blood sample, arguing that the "requirement" language in the admin per se admonition coerced her consent. The trial court summarily denied her motion. Weakland was convicted on both counts.
 

 ¶4 On appeal, Weakland argued that, pursuant to
 
 Valenzuela II
 
 , her blood was obtained
 without a warrant and without valid consent, and that the good-faith exception recognized in
 
 Valenzuela II
 
 did not apply. The State implicitly conceded on appeal that Weakland's consent to the blood draw was involuntary and, thus, invalid pursuant to
 
 Valenzuela II
 
 , but argued that the good-faith exception to the exclusionary rule obviated the need to suppress the blood evidence. In a divided opinion, the court of appeals affirmed.
 
 State v. Weakland
 
 ,
 
 244 Ariz. 79
 
 ,
 
 418 P.3d 446
 
 (App. 2017). The majority reasoned that, because Arizona courts had not held that the admin per se admonition was "coercive, ineffective, or otherwise [affirmatively] negated consent" until
 
 Valenzuela II
 
 , police acted in good faith when they read it to Weakland after her arrest.
 
 See
 

 id.
 

 at 83 ¶ 19, 85 ¶ 24,
 
 418 P.3d at 450, 452
 
 . The dissent argued that although existing precedent may have justified applying the good-faith exception to the defendant's 2012 arrest in
 
 Valenzuela II
 
 , this Court's 2013
 
 Butler
 
 decision placed police on notice before Weakland's 2015 arrest that use of the admin per se admonition was constitutionally suspect.
 

 Id.
 

 at 85 ¶¶ 27-28,
 
 418 P.3d at 452
 
 (Eckerstrom, C.J., dissenting). The applicability of the good-faith exception to the exclusionary rule for cases involving use of the admin per se admonition after
 
 Butler
 
 , but before
 
 Valenzuela II
 
 , is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.
 

 II.
 

 ¶5 "We review the denial of a motion to suppress evidence for abuse of discretion, considering the facts in the light most favorable to sustaining the ruling."
 
 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 302 ¶ 9,
 
 371 P.3d at 630
 
 . We review de novo the applicability of the good-faith exception.
 
 State v. Havatone
 
 ,
 
 241 Ariz. 506
 
 , 509 ¶ 11,
 
 389 P.3d 1251
 
 , 1254 (2017).
 

 ¶6 "The exclusionary rule, which allows suppression of evidence obtained in violation of the Fourth Amendment, is a prudential doctrine invoked [solely] to deter future violations."
 
 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 308-09 ¶ 31,
 
 371 P.3d at
 
 636-37 (citing
 
 Davis v. United States
 
 ,
 
 564 U.S. 229
 
 , 236-37,
 
 131 S.Ct. 2419
 
 ,
 
 180 L.Ed.2d 285
 
 (2011) ). "Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search."
 
 Davis
 
 ,
 
 564 U.S. at 236
 
 ,
 
 131 S.Ct. 2419
 
 (quoting
 
 Stone v. Powell
 
 ,
 
 428 U.S. 465
 
 , 486,
 
 96 S.Ct. 3037
 
 ,
 
 49 L.Ed.2d 1067
 
 (1976) ). Because "a deterrence purpose can only be served when the evidence to be suppressed is derived from a search which the [police] knew or should have known was unconstitutional under the Fourth Amendment,"
 
 United States v. Johnson
 
 ,
 
 457 U.S. 537
 
 , 565,
 
 102 S.Ct. 2579
 
 ,
 
 73 L.Ed.2d 202
 
 (1982) (White, J., dissenting), the rule is intended to deter only "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."
 
 Herring v. United States
 
 ,
 
 555 U.S. 135
 
 , 144,
 
 129 S.Ct. 695
 
 ,
 
 172 L.Ed.2d 496
 
 (2009). Therefore, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence," the good-faith exception applies because "the deterrence rationale loses much of its force, and exclusion cannot pay its way."
 
 Davis
 
 ,
 
 564 U.S. at 238
 
 ,
 
 131 S.Ct. 2419
 
 (internal citations and quotation marks omitted);
 
 see also
 
 A.R.S. § 13-3925 (codifying good-faith exception to the exclusionary rule).
 

 ¶7 "Real deterrent value is a 'necessary condition for exclusion,' but it is not 'a sufficient' one."
 
 Davis
 
 ,
 
 564 U.S. at 237
 
 ,
 
 131 S.Ct. 2419
 
 (quoting
 
 Hudson v. Michigan
 
 ,
 
 547 U.S. 586
 
 , 596,
 
 126 S.Ct. 2159
 
 ,
 
 165 L.Ed.2d 56
 
 (2006) ). "For exclusion to be appropriate, the deterrence benefits of suppression must [also] outweigh its heavy costs."
 

 Id.
 

 (noting that exclusion's "bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment"). Consequently, exclusion of evidence should be a "last resort."
 

 Id.
 

 (quoting
 
 Hudson
 
 ,
 
 547 U.S. at 591
 
 ,
 
 126 S.Ct. 2159
 
 ). The state bears the burden of establishing that the good-faith exception applies.
 
 Havatone
 
 ,
 
 241 Ariz. at
 
 511 ¶ 19,
 
 389 P.3d at 1256
 
 .
 

 III.
 

 ¶8 This case turns on whether police objectively, reasonably relied on "binding appellate
 precedent" in using the admin per se admonition at the time of Weakland's arrest after
 
 Butler
 
 but before
 
 Valenzuela II
 
 .
 
 See
 

 Havatone
 
 ,
 
 241 Ariz. at
 
 512 ¶ 24,
 
 389 P.3d at 1257
 
 . Stated differently, we must determine whether the law regarding the admonition was "unsettled" at the time of Weakland's arrest, meaning law enforcement officers could not rely on precedent to authorize the illegal search.
 

 Id.
 

 at 512-13 ¶ 29,
 
 389 P.3d at
 
 1257-58 (citing
 
 Davis
 
 ,
 
 564 U.S. at 250
 
 ,
 
 131 S.Ct. 2419
 
 (Sotomayor, J., concurring in the judgment)). When making this assessment, we do not require police to have a "crystal ball" in determining what courts may conclude in future cases but rather require them to act in objectively reasonable reliance on then-existing authority.
 
 State v. Jean
 
 ,
 
 243 Ariz. 331
 
 , 343 ¶ 45,
 
 407 P.3d 524
 
 , 536 (2018) ;
 
 see
 

 United States v. Leon
 
 ,
 
 468 U.S. 897
 
 , 919 n.20,
 
 104 S.Ct. 3405
 
 ,
 
 82 L.Ed.2d 677
 
 (1984) (stating that the good-faith exception requires that police have "a reasonable knowledge of what the law prohibits").
 

 ¶9 Mindful of tension between
 
 Havatone
 
 and
 
 Jean
 
 , we clarify the standard for the good-faith exception. We noted in
 
 Havatone
 
 that "
 
 Davis
 
 instructs that law enforcement acts in good faith if 'binding appellate precedent specifically
 
 authorizes
 
 a particular police practice.' "
 
 241 Ariz. at
 
 512 ¶ 24,
 
 389 P.3d at 1257
 
 (quoting
 
 Davis
 
 ,
 
 564 U.S. at 241
 
 ,
 
 131 S.Ct. 2419
 
 ). Although an accurate statement,
 
 Davis
 
 did not limit the good-faith exception only to circumstances when appellate precedent specifically authorizes a police practice. In fact, in
 
 Jean
 
 , we rejected the proposition that "to qualify as 'binding appellate precedent under
 
 Davis
 
 ,' a case 'must specifically authorize the precise conduct under consideration.' "
 
 243 Ariz. at
 
 343 ¶ 45,
 
 407 P.3d at 536
 
 (quoting
 
 United States v. Katzin
 
 ,
 
 769 F.3d 163
 
 , 173-76 (3d Cir. 2014) ). Instead, we concluded that the good-faith exception applies if the search was "conducted in objectively reasonable reliance on ... binding appellate precedent ...."
 
 Jean
 
 ,
 
 243 Ariz. at
 
 343 ¶ 47,
 
 407 P.3d at
 
 536 ;
 
 see also
 

 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 309 ¶ 31,
 
 371 P.3d at 637
 
 ("[W]hen law enforcement officers 'act with an objectively reasonable good-faith belief that their conduct is lawful,' deterrence is unnecessary and the exclusionary rule does not apply." (quoting
 
 Davis
 
 ,
 
 564 U.S. at 238
 
 ,
 
 131 S.Ct. 2419
 
 )). We find
 
 Jean
 
 's approach more consistent with
 
 Davis
 
 's reasoning and the purpose of the exclusionary rule and the good-faith exception to it.
 
 See
 

 Davis
 
 ,
 
 564 U.S. at 240-41, 249
 
 ,
 
 131 S.Ct. 2419
 
 (reasoning that the exclusionary rule does not apply where police reasonably rely on binding appellate precedent because "[p]olice practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningfu[l]' deterrence, and culpable enough to be 'worth the price paid by the justice system' " (alteration in original) (citations omitted)). We see no reason to limit the good-faith exception to police practices that appellate precedent specifically authorizes when the rationale for the exception applies with equal force where binding appellate precedent otherwise supports the practice. To the extent that
 
 Havatone
 
 and
 
 Jean
 
 conflict, and despite Justice Bolick's reliance on the "specific authorization" standard,
 
 infra
 
 ¶¶ 41, 48, we reaffirm
 
 Jean
 
 's reasonableness approach.
 

 ¶10 Weakland contends that the good-faith exception does not apply in her case because
 
 Butler
 
 "unsettled" the law. We are unpersuaded. Although in
 
 Havatone
 
 we embraced the somewhat opaque concept (at least in its application) that the good-faith exception should not apply when the law is "unsettled" as to the constitutionality of a police practice,
 
 241 Ariz. at
 
 512-13 ¶ 29,
 
 389 P.3d at 1257-58
 
 , merely branding the state of the law between
 
 Butler
 
 and
 
 Valenzuela II
 
 as "unsettled" does not repudiate Arizona's appellate courts' repeated authorization of the admin per se admonition.
 

 ¶11 The gravamen of Weakland's argument is that the good-faith exception should not apply to her case because, after
 
 Butler
 
 , the police should have known that administering the admin per se admonition, pursuant to § 28-1321, would be insufficient as an exception to the Fourth Amendment's warrant requirement or would be insufficient, by itself, to establish voluntary consent to the test. In other words, if
 
 Butler
 
 did not expressly invalidate use of the admonition, it at least "unsettled" the law. Either way, Weakland
 contends,
 
 Butler
 
 put police on notice that use of the form was constitutionally dubious. We disagree.
 

 ¶12 The issue in
 
 Butler
 
 was "whether the Fourth Amendment ... requires that a juvenile arrestee's consent be voluntary to allow a warrantless blood draw."
 
 232 Ariz. at
 
 86 ¶ 1,
 
 302 P.3d at 611
 
 . Applying
 
 Missouri v. McNeely
 
 ,
 
 569 U.S. 141
 
 ,
 
 133 S.Ct. 1552
 
 ,
 
 185 L.Ed.2d 696
 
 (2013), this Court held that the Fourth Amendment requires that, "independent of § 28-1321," an arrestee's consent to a warrantless blood draw be voluntary under the totality of the circumstances.
 

 Id.
 

 at 88 ¶ 18,
 
 302 P.3d at 613
 
 . Although this Court assessed the circumstances under which the juvenile defendant assented to the warrantless blood draw after hearing the admonition, including his age, the duration of his detention, the absence of his parents, and his disquieted demeanor, the sufficiency of consent given in response to the admin per se admonition alone was not otherwise before the Court.
 

 Id.
 

 at 88-89 ¶¶ 20-21,
 
 302 P.3d at 613-14
 
 . Indeed, if it were, the Court could have found the lack of voluntary consent based solely on use of the admonition without discussing other factors.
 

 Id.
 

 at 91 ¶ 32,
 
 302 P.3d at 616
 
 (Pelander, J., concurring) (noting facts also showed that the juvenile's consent in response to the admonition was voluntary and concluding that "had the juvenile court found [the juvenile's] consent voluntary, I would have had no difficulty affirming that ruling, and I doubt my colleagues would have either"). If anything,
 
 Butler
 
 emphasizes that the totality of the circumstances must be considered in determining compliance with the Fourth Amendment and illustrates that factors such as a juvenile arrestee's age and circumstances can override what otherwise may have been voluntary consent to a blood test following the admonition.
 
 See
 

 Butler
 
 ,
 
 232 Ariz. at
 
 88 ¶ 18,
 
 302 P.3d at 613
 
 . But it did not implicitly suggest that consent given in response to the admin per se admonition is involuntary, absent other circumstances, as we later held in
 
 Valenzuela II
 
 .
 
 239 Ariz. at
 
 301 ¶ 2,
 
 371 P.3d at 629
 
 .
 

 ¶13 In sum,
 
 Butler
 
 did not address whether use of the admonition was inherently coercive, did not clearly address its effect, and did not expressly question its validity. In fact,
 
 Butler
 
 failed to meaningfully acknowledge the two binding appellate cases authorizing use of the language on the admin per se admonition-
 
 Campbell v. Superior Court
 
 ,
 
 106 Ariz. 542
 
 ,
 
 479 P.2d 685
 
 (1971), and
 
 State v. Brito
 
 ,
 
 183 Ariz. 535
 
 ,
 
 905 P.2d 544
 
 (App. 1995). Consequently,
 
 Butler
 
 did not "unsettle" the law because it failed to repudiate Arizona appellate courts' existing authorization for use of the admonition.
 

 ¶14 Although Weakland strives to expand
 
 Butler
 
 's holding beyond its plain terms,
 
 Valenzuela II
 
 settles the issue and forecloses Weakland's claim that
 
 Butler
 
 "unsettled" the law concerning use of the admin per se admonition. In
 
 Valenzuela II
 
 , this Court held that
 
 Campbell
 
 and
 
 Brito
 
 constituted binding appellate precedent, sanctioning the language used on the admin per se admonition, and affirmed that "[w]e neither suggested that the admonition ... misstated the law or was coercive, nor ha[d] this Court ever questioned or overruled
 
 Campbell
 
 or
 
 Brito
 
 ."
 
 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 309 ¶ 34,
 
 371 P.3d at 637
 
 . In doing so, we rejected the argument that continued use of the admin per se admonition reflected "recurring or systemic negligence" in the wake of
 
 Carrillo v. Houser
 
 ,
 
 224 Ariz. 463
 
 ,
 
 232 P.3d 1245
 
 (2010).
 

 Id.
 

 In fact,
 
 Valenzuela II
 
 expressly declined to fault police for "failing to anticipate that we would disapprove the admin per se [admonition] in the wake of
 
 Carrillo
 
 " when
 
 Carrillo
 
 was "not dispositive of the issue" and when Arizona courts had "continued to approve the admonition."
 

 Id.
 

 Valenzuela II
 
 leaves no doubt that, at the time of the decision, Arizona appellate courts had continuously authorized use of the existing admin per se admonition.
 

 ¶15 That the defendant's arrest in
 
 Valenzuela II
 
 preceded
 
 Butler
 
 , whereas Weakland's arrest followed it, is immaterial to our analysis and conclusion that Arizona's appellate courts continued to authorize use of the admonition at the time of Weakland's arrest. In fact,
 
 Valenzuela II
 
 cited
 
 State v. Oliver
 
 , No. 2 CA-CR 2014-0359,
 
 2015 WL 4924747
 
 (Ariz. App. Aug. 18, 2015) (mem. decision), involving a post-
 
 Butler
 
 DUI arrest and warrantless blood seizure that occurred after Weakland's arrest, to illustrate the proposition
 that "our courts have continued to approve the admonition."
 
 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 309-10 ¶ 34,
 
 371 P.3d at 637-38
 
 . In other words, this Court surveyed the legal landscape pre- and post-
 
 Butler
 
 and concluded that, until its decision in
 
 Valenzuela II
 
 , our appellate courts had continued to authorize use of the admonition.
 

 ¶16 Indeed,
 
 Oliver
 
 was only one of several post-
 
 Butler
 
 appellate decisions sanctioning police use of the admonition.
 
 See
 

 State v. Valenzuela
 
 (
 
 Valenzuela I
 
 ),
 
 237 Ariz. 307
 
 , 310 ¶ 7, 315 ¶ 31,
 
 350 P.3d 811
 
 , 814 (App. 2015) ;
 
 see also
 

 State v. Okken
 
 ,
 
 238 Ariz. 566
 
 , 571 ¶¶ 17-18 & n.1,
 
 364 P.3d 485
 
 , 490 (App. 2015) (discussing
 
 Butler
 
 and the statutory requirement of "actual consent before a warrantless search may be performed," yet failing to mention deficiencies with the admonition and focusing, instead, on "other factors" rendering consent involuntary);
 
 State v. Pena
 
 , No. 2 CA-CR 2013-0241,
 
 2014 WL 3407343
 
 , at *2 ¶¶ 6-8 (Ariz. App. July 10, 2014) (noting
 
 Butler
 
 's requirement that a breath test is "subject to the Fourth Amendment's constraints," but citing the admonition as a basis, in part, for valid consent);
 
 State v. Figueroa
 
 , No. 2 CA-CR 2012-0458,
 
 2014 WL 287959
 
 , at *4-5 ¶¶ 19-21 (Ariz. App. Jan. 24, 2014) (mem. decision) (citing
 
 Butler
 
 as requiring compliance with the Fourth Amendment for blood draws, but finding that defendant consented, in the absence of police force, after hearing the admonition).
 
 [1]
 
 In each of these cases, the court of appeals concluded "that the defendants' consent, obtained in response to the admonition, was voluntary" considering the totality of the circumstances.
 
 See
 

 Weakland
 
 ,
 
 244 Ariz. at
 
 84-85 ¶ 23,
 
 418 P.3d at 451-52
 
 . The dissents ignore or dismiss these cases. But if Arizona's appellate courts did not interpret
 
 Butler
 
 as unsettling the law on the use of the admin per se admonition, it would be unreasonable to fault the police for failing to do so.
 
 See
 

 Davis
 
 ,
 
 564 U.S. at 241
 
 ,
 
 131 S.Ct. 2419
 
 (stating that "penaliz[ing] the officer for the appellate judges' error" "cannot logically contribute to the deterrence of Fourth Amendment violations" (citations omitted)).
 

 ¶17 Justice Bolick assails the reasoning and result in
 
 Valenzuela II
 
 concerning the good-faith exception even as he purports to rely upon it. Specifically, he contends that
 
 Valenzuela II
 
 's analysis of
 
 Bumper v. North Carolina
 
 ,
 
 391 U.S. 543
 
 ,
 
 88 S.Ct. 1788
 
 ,
 
 20 L.Ed.2d 797
 
 (1968), and
 
 Schneckloth v. Bustamonte
 
 ,
 
 412 U.S. 218
 
 ,
 
 93 S.Ct. 2041
 
 ,
 
 36 L.Ed.2d 854
 
 (1973), demonstrates that, after
 
 Bumper
 
 , police should have known that the admin per se admonition was coercive.
 
 See
 

 infra
 
 ¶ 43 (suggesting that because
 
 Bumper
 
 and
 
 Johnson v. United States
 
 ,
 
 333 U.S. 10
 
 ,
 
 68 S.Ct. 367
 
 ,
 
 92 L.Ed. 436
 
 (1948), directed the outcome in
 
 Valenzuela II
 
 , "[i]t is very difficult to argue" that the holding in
 
 Valenzuela II
 
 "should have come as a surprise"). Necessarily, he suggests that
 
 Valenzuela II
 
 wrongly applied the good-faith exception. But Weakland does not urge this Court to overrule
 
 Valenzuela II
 
 , and we see no reason to revisit its holding here.
 

 ¶18
 
 Havatone
 
 offers Weakland no safe harbor. In
 
 Havatone
 
 , this Court declined to apply the good-faith exception to the exclusionary rule when police directed a warrantless blood draw, based on alleged exigent circumstances (dissipation of alcohol in the blood), on an unconscious driver suspected of DUI who had been transported out of Arizona for medical treatment.
 
 241 Ariz. at
 
 508 ¶ 5, 512 ¶ 23,
 
 389 P.3d at 1253, 1257
 
 . We reasoned that police "should have known that routinely directing blood draws from DUI suspects who were sent out of state for emergency treatment, without making a case-specific determination whether a warrant could be timely secured, was either impermissible or at least constitutionally suspect" because the police practice had "been discredited for over fifty years."
 

 Id.
 

 at 511 ¶ 20, 512 ¶ 24,
 
 389 P.3d at 1256, 1257
 
 . We noted, further, that "no binding precedents specifically authorized" the police practice.
 

 Id.
 

 at 512 ¶ 28,
 
 389 P.3d at 1257
 
 .
 

 ¶19 Here, police operated in a distinctly different legal landscape from that in
 
 Havatone
 
 . Unlike there, where courts had discredited the police practice for over fifty years and no binding precedents specifically authorized it, Arizona appellate courts
 
 had
 
 authorized police reliance on the language used in the statutory admin per se admonition for over forty years at the time of Weakland's arrest. And even if
 
 Butler
 
 presaged future court disavowal of the admonition, it did not foreclose its use.
 
 Cf.
 

 Leon
 
 ,
 
 468 U.S. at
 
 919 n.20,
 
 104 S.Ct. 3405
 
 (holding that the good-faith exception requires "a reasonable knowledge of what the law prohibits"). To the contrary, in
 
 Butler'
 
 s wake, Arizona's trial and appellate courts continued to implicitly or expressly authorize use of the admonition.
 

 IV.
 

 ¶20 We reaffirm our conclusion in
 
 Valenzuela II
 
 that, until that decision, our courts had continued to authorize use of the admonition
 
 .
 
 It is unreasonable to require the police to predict a shift in the law when our trial and appellate courts failed to do so. The deterrent purpose of the exclusionary rule does not apply here because the police followed binding appellate precedent that persisted in
 
 Butler
 
 's wake. We should not endeavor to divine "unsettled" law where none exists merely to constrain application of the good-faith exception. Such an approach turns the purpose of the exclusionary rule on its head. It is the exclusionary rule, not the good-faith exception to it, that we turn to as a "last resort."
 
 See, e.g.
 
 ,
 
 Leon
 
 ,
 
 468 U.S. at 918-19
 
 ,
 
 104 S.Ct. 3405
 
 (reasoning that "even assuming that the [exclusionary] rule effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity"). We decline to invoke the rule to penalize the police for what can, at worst, be described as appellate judges' error in continuing to approve consent in response to the admin per se admonition after
 
 Butler
 
 , and we will not prescribe the "bitter pill" of exclusion where we find that police engaged in neither deliberate, reckless, or grossly negligent conduct, nor recurring or systemic negligence.
 
 See
 

 Davis
 
 ,
 
 564 U.S. at 237, 240-41
 
 ,
 
 131 S.Ct. 2419
 
 .
 

 ¶21 We vacate the court of appeals' opinion and affirm Weakland's convictions and sentences.
 

 Justice Bolick asserts that our notice of these unpublished decisions does not support our position because they cannot constitute binding appellate authority pursuant to Arizona Supreme Court Rule 111(c).
 
 Infra
 
 ¶ 49 n.4. We do not cite these unpublished decisions as authority, but rather as proof of a factual point - that appellate courts continued to approve the admonition after
 
 Butler
 
 .