NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellant*,

v.

TIMOTHY ALEXANDER MCNEILL, *Appellee*.

No. 1 CA-CR 18-0911
FILED 10-1-2019

Appeal from the Superior Court in Maricopa County
No. CR2017-002133-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

David G. Derickson, PC, Phoenix
By David G. Derickson
*Counsel for Appellee*

Maricopa County Attorney's Office, Phoenix
By Amanda M. Parker
*Counsel for Appellant*

Pacific Legal Foundation, Sacramento
By Timothy Sandefur
*Counsel for Amicus Curiae Goldwater Institute*

American Civil Liberties Union of Arizona, Phoenix
By Kathleen E. Brody
*Counsel for Amicus Curiae Arizona Attorneys for Criminal Justice*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Diane M. Johnsen joined.

---

**W E I N Z W E I G**, Judge:

¶1 The State of Arizona appeals the superior court's order granting Timothy Alexander McNeill's motion to suppress the written contents of two notebooks discovered during an inventory search of McNeill's automobile. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Scottsdale Police Officers Marienau and Pedersen observed McNeill make an improper left turn and then conducted a traffic stop of his vehicle. McNeill was arrested for driving on a suspended license. At the time, Arizona law required the officers to remove and impound McNeill's vehicle under A.R.S. § 28-3511(A)(1)(a).[1] Before having the vehicle towed, however, Officer Marienau performed an inventory search. Among other things, his search yielded one black notebook in a backpack found in the trunk and one multicolored notebook found in the driver's side door panel. As the State explains the sequence of events, Officer Marienau opened the notebooks "to determine if there were dangerous or valuable items inside" and found they "contained myriad personal identifying information: bank account information, credit card numbers, names, dates of birth, address, social security numbers, email addresses, and passwords."

---

[1] A.R.S. § 28-3511(A)(1)(a) was revised and no longer requires police officers to immobilize or impound vehicles unless they are driven by persons whose driving privileges are "revoked." *See* Laws 2018, Ch. 113 § 13 (eff. Jan. 1, 2019). The statute previously mandated impoundment when a person's license was "suspended *or* revoked."

¶3        McNeill was indicted on one felony count of Aggravated Taking Identity of Another.  He moved the superior court to suppress the written contents of the two notebooks under the exclusionary rule, arguing that Officer Marienau exceeded the scope of a valid inventory search and violated his Fourth Amendment rights by reading the notebooks.

¶4        Neither party requested an evidentiary hearing on the motion to suppress, but the superior court held oral argument.  The argument transcript indicates the parties stipulated that the police officers (1) arrested McNeill and initiated an inventory search of his vehicle without probable cause of identity theft, (2) found the notebooks during that valid inventory search, and (3) "read the contents" of the notebooks during the inventory search.

¶5        At oral argument before the superior court, the State claimed the officers were entitled to open and read "every page" of the notebooks because "the words themselves [were] in plain view" and the officers "are legally allowed to read something once they are in a place to see it."  McNeill countered that officers could have satisfied the purposes of an inventory search "just by shaking [the notebooks] out," and asserted "there really wasn't any requirement or any need or necessity" to explore the notebooks.

¶6        The court granted McNeill's motion from the bench, suppressing all contents of the notebooks.  Although the court found that the officers performed "a proper vehicular stop" and had "proper grounds for seizing the vehicle" and conducting an inventory search, it also found the search exceeded the bounds and purpose of a permissible inventory search.  The court explained that "the purpose of an inventory" is to "make sure that there's no dangerous [or expensive] items going into police custody."  The court held the policy "did not require reading the contents of . . . the [notebooks]."  The court also found that while the officers acted in "good faith," their "good faith belief . . . did not justify reading the content of the [notebooks]."  In its subsequent minute entry, the court again held that "the officer's action did not justify a reading of the contents of the [notebooks]."

¶7        The State moved the superior court for reconsideration, recharacterizing the evidence in the process.  For the first time, the State argued that Officer Marienau observed "'giant' colorful handwriting on top of one of the notebook's pages that read 'CREDIT CARDS,' followed by a handwritten list of credit card numbers, expiration dates, and CVV codes."  The motion was denied.

¶8            The State timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4032(6), and 13-4033(A)(1).[2]

**DISCUSSION**

¶9            As a threshold matter, we emphasize the absence of any meaningful record on appeal.  The State designated the record on appeal to include "the oral argument" transcript, "all documents filed in the superior court," and "any documents entered into evidence on December 7, 2018." From our review, however, the record is devoid of any testimony or other evidence—no notebooks, police reports or photographs are in the record. All we have are the filings in connection with McNeill's motion to suppress and a transcript of the oral argument.  No evidence was offered or admitted at oral argument, nor was evidence attached to the motion, the response or the reply.

¶10           The only issue on appeal is whether the police officers exceeded the scope of a valid inventory search by reading the contents of the two notebooks.  A superior court's ruling on a motion to suppress evidence will not be set aside absent a clear abuse of discretion, *State v. Sharp*, 193 Ariz. 414, 419, ¶ 12 (1999), and is viewed in the light most favorable to upholding the court's ruling, *State v. Estrada*, 209 Ariz. 287, 288, ¶ 2 (App. 2004).  We defer to the superior court's factual determinations unless they are clearly erroneous, but the ultimate question of whether suppression of evidence is warranted is a conclusion of law we review *de novo*.  *State v. Valle*, 196 Ariz. 324, 326, ¶ 6 (App. 2000).  "We restrict our view to consideration of the facts the [superior] court heard at the suppression hearing."  *State v. Blackmore*, 186 Ariz. 630, 631 (1996).

I.     **Fourth Amendment**

¶11           The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV; *State v. Wilson*, 237 Ariz. 296, 298, ¶ 7 (2015).  The "ultimate      touchstone"      of      Fourth      Amendment      protection      is "reasonableness," *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), which

---

[2] The Goldwater Institute and Arizona Attorneys for Criminal Justice filed amicus curiae briefs in this matter on the Private Affairs Clause of the Arizona Constitution.  Ariz. Const. art. II § 8.  We need not and do not reach that issue.

"generally requires the obtaining of a judicial warrant," *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 653 (1995). A warrantless search is not permissible unless it falls under an exception to the warrant requirement. *Riley v. California*, 573 U.S. 373, 382 (2014).

¶12 This case involves a warrantless search. The State thus bore the burden of "proving by a preponderance of the evidence the lawfulness in all respects of the acquisition of all evidence that the State will use at trial." Ariz. R. Crim. P. 16.2(b)(1); *Rodriguez v. Arellano*, 194 Ariz. 211, 215, ¶ 12 (App. 1999). The State presses two exceptions to the warrant requirement on appeal, the inventory search and the plain view doctrine.

### A. Inventory Search

¶13 An inventory search is a "well-defined" exception to the warrant requirement. *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983). It occurs when, like here, police inventory a vehicle's contents before it is removed and impounded. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). A valid inventory search aims to protect law enforcement from danger, safeguard an arrested person's property from theft or vandalism, and insulate law enforcement from claims of theft or vandalism to seized property. *Id.* Warrantless inventory searches of an automobile are thus permissible if officers (1) have lawful custody or possession of the vehicle, and (2) act in good faith and do not use the inventory procedure as a subterfuge for a warrantless search. *In re One Econoline*, 109 Ariz. 433, 435 (1973).

¶14 The first element was undisputed. Police had lawful possession of the vehicle under A.R.S. § 28-3511(A)(1)(a), and Officer Marienau located the notebooks during a valid inventory search of the vehicle. *State v. Organ*, 225 Ariz. 43, 48, ¶ 22 (App. 2010). But the court ultimately found that locating the notebooks "did not justify a reading of the[ir] contents," and we cannot hold the superior court abused its discretion on this sparse record. While it was not unreasonable for Officer Marienau to open the notebooks to ensure that no weapons, contraband or other valuables were tucked between its pages, *see Lafayette*, 462 U.S. at 647 ("The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of 'less intrusive' means."), he need not have read through the notebooks to achieve the purposes of an inventory search.

### B. Plain View Doctrine

¶15 The State also offers the plain view doctrine as an exception to the warrant requirement in conjunction with the inventory search

exception. No warrant was required, the State argues, because the contents of the notebooks were in plain view as Officer Marienau performed a valid inventory search.

¶16 Under the plain view doctrine, "if police are lawfully in a position from which they can view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *State v. Sisco*, 239 Ariz. 532, 535, ¶ 11 (2016). Courts have recognized two important limitations on the doctrine. First, police must still have probable cause to believe the object in plain view is contraband "without conducting some further search of the object." *Dickerson*, 508 U.S. at 375. Second, the incriminating character must be "immediately apparent," otherwise the plain view doctrine does not justify its seizure. *Id*.

¶17 On this sparse record, we cannot review (much less reverse) the superior court's decision. *See State v. Berge*, 130 Ariz. 135, 136 (1981) ("We have held that it is the responsibility of the party objecting to see that the record on appeal contains the material to which exception is taken."); *State v. Lavers*, 168 Ariz. 376, 399 (1991) ("[W]e assume that any evidence not available on appeal supports the trial court's actions.").

¶18 Aside from three stipulated facts gleaned from an oral argument transcript, this court has no evidence, no documents and no testimony to perform an intelligent and meaningful review. Thus, while the State asserts Officer Marienau's attention was caught by "giant" and "colorful handwriting" in the notebooks, this court has no notebooks in the record on appeal, and no testimony or police reports to test or accept the State's descriptions in any form. Also missing from the record is any testimony from Officer Marienau that he saw a list of credit card numbers while skimming the notebooks and immediately understood the incriminating character of the evidence, whether based on his law enforcement experience, training or otherwise. Nor was that evidence introduced in the superior court.

### C. Good-Faith Exception

¶19 Assuming the officers had no exception to the warrant requirement, the State argues the evidence is nonetheless admissible under the good-faith exception to the exclusionary rule. The burden rests with the State to prove that the good-faith exception applies under either federal or

state law. *State v. Crowley*, 202 Ariz. 80, 91, ¶ 32 (App. 2002). We review *de novo* the legal question of whether the State satisfied this burden. *Id*.

**¶20** Arizona recognizes the good-faith exception to the exclusionary rule when law enforcement "objectively, reasonably relie[s] on 'binding appellate precedent.'" *State v. Weakland*, 246 Ariz. 67, ¶ 8 (2019). The State claims that Officer Marienau "objectively" and "reasonably" relied on *State v. Kelly*, 130 Ariz. 375 (App. 1981), as "binding appellate precedent in the plain view context [that] otherwise supported his conduct."

**¶21** This record, however, includes no documents or testimony to compare and contrast the search at issue here with that in *Kelly*, where this court held that officers must have understood the importance of blank registration forms from a glance because the forms "h[ad] bold-faced headings which could be identifiable as registration forms even if simply glanced at while searching for weapons." *Id*. at 378. And the State's description of "giant" and "colorful handwriting" in the notebooks, first raised in a motion for reconsideration below, is not evidence.

## CONCLUSION

**¶22** We affirm the superior court's decision to suppress the contents of the two notebooks.



AMY M. WOOD • Clerk of the Court
FILED: AA

7